899 F.2d 361
 23 Collier Bankr.Cas.2d 567, 20 Bankr.Ct.Dec. 679,
Bankr. L. Rep. P 73,374
 In the Matter of Bayless Milton HESTER, III and Evalynn
Jordan Hester, Debtors.
Bayless Milton HESTER, III, a/k/a B.M. Hester and Evalynn
Jordan Hester, Appellants,
v.
NCNB TEXAS NATIONAL BANK, Appellee.
 No. 90-1227
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 April 13, 1990.
 St. Clair Newbern, III, Paula C. Conley, Law Offices of St. Clair Newbern, III, Ft. Worth, Tex., for appellants.
 John D. Penn, Hayes & Boone, Fort Worth, Texas; Jack Banner, Steve Briley, Banner & Briley, Wichita Falls, Texas for NCNB Texas National Bank.
 John A. Leonard, Russell, Tate & McGowan, P.C., for John A. Leonard, Trustee.
 Victoria Tutterrow, Office of United States Trustee, Dallas, Texas.
 John D. Penn, Hayneyes & Boone, Fort Worth, Texas; Jack Banner, Steve Briley, Banner & Briley, Wichita Falls, Texas for NCNB Texas National Bank.
 Appeal from the United States District Court for the Northern District of Texas.
 Before REAVLEY, KING and JOHNSON, Circuit Judges.
 KING, Circuit Judge:
 
 
 1
 Evalynn Jordan Hester, Individually and as Executrix of the Estate of Bayless Milton Hester, III (collectively, the "Debtors"), appealed to this court the order (the "Order Denying Stay") of the district court entered on March 27, 1990, denying the Debtors' motion for stay of a bankruptcy court order pending appeal. The order that the Debtors are appealing to the district court is styled "Order for Disgorgement of Funds and for Appointment of Chapter 11 Trustee" (the "Disgorgement Order") and was entered by the bankruptcy court on February 12, 1990. Presently pending before this panel is a motion by the Debtors for stay of the Disgorgement Order pending its appeal to the district court.
 
 
 2
 I. Facts and Procedural Background.
 
 
 3
 The Debtors' bankruptcy case has been pending for more than two years in the Wichita Falls Division of the Northern District of Texas. The bankruptcy case was filed by Bayless Manning Hester, III and Evalynn Jordan Hester, his wife. During the pendency of the case, Mr. Hester died. The case was filed under Chapter 11 of the Bankruptcy Code, and the Debtors continued in possession to conduct their family-owned and operated business, which consists of the production of oil and gas. The Debtors filed in 1987 and ever since have pursued what appears to be a lender liability action against the predecessor in interest of NCNB Texas National Bank (the "Bank"), the Federal Deposit Insurance Corporation, and Joseph N. Prothro, individually, in the District Court for the Northern District of Texas. The Bank is a secured creditor of the Debtors with a claim in excess of four million dollars. Substantially all of the Debtors' income-producing oil and gas properties are pledged to the Bank. The Debtors' Chapter 11 case appears to have moved along. Two plans of reorganization and related disclosure statements have been filed, one by the Debtors and one by the Bank.
 
 
 4
 The Bank's Amended Motion for Disgorgement of Unauthorized Payments (the "Disgorgement Motion") was filed in the bankruptcy court on January 4, 1990. It alleged that the Debtors had transferred to James Craig Dodd ("Dodd"), a lawyer, during October and November of 1989, a total of approximately $30,000. The Disgorgement Motion recognizes that the transfers were reflected in the Debtors' operating reports for those months. The Disgorgement Motion alleges that the transfers were improper because they were not preceded by a fee application as required by the Bankruptcy Code. The Disgorgement Motion further alleges that the Debtors' request to employ Dodd in the case had been disallowed by the bankruptcy court.[1] Finally, the Disgorgement Motion alleges that the funds used to pay Dodd, in all likelihood, constitute cash collateral of the Bank that cannot be distributed to pay administrative claims absent compliance with the Bankruptcy Code. Respecting the cash collateral problem, the motion states:
 
 
 5
 Therefore, the payment to Mr. Dodd constitute [sic] other abuses of the cash collateral of NCNB Texas in violation of 11 U.S.C. Sec. 363. Other abuses are outlined in the Motion to Restrict Debtor's Use of Cash Collateral [the Cash Collateral Motion referred to infra ] and other relief filed by NCNB Texas. The repeated violations of the requirements and protections of the Bankruptcy Code clearly constitute cause for the appointment of a Trustee pursuant to 11 U.S.C. Sec. 1104.
 
 
 6
 Insofar as relief is concerned, the Disgorgement Motion asks the following: first, that Dodd be required to refund all post-petition payments that he received from the Debtors; second, that Dodd be required to show cause why he should not be held in contempt of court for his participation in the unauthorized transfers; third, that the Bank be authorized to prosecute any litigation against Dodd that may be required to return the funds to the estate; and fourth, for such other and further relief to which the Bank may show itself justly entitled. Conspicuously absent from the Disgorgement Motion is a specific request for the appointment of a trustee for the Debtors' estate.
 
 
 7
 The Debtors' answer admits the factual allegations of the Disgorgement Motion regarding the payments to Dodd and the lack of authorization thereof and claims that the amounts transferred were expenses incurred by Dodd in representing the estate in its lender liability suit against the Bank.[2] The answer asserts that the payments were made inadvertently and emphasizes that they were disclosed in the Debtors' operating reports. Finally, the answer denies that cause exists to appoint a trustee.
 
 
 8
 At the hearing held on February 1, 1990, on the Disgorgement Motion, counsel for the Bank began by stating simply that the Disgorgement Motion asks for disgorgement of payments to Dodd. Mrs. Hester testified that she had made the payments to Dodd in reimbursement of his expenses in connection with the Debtors' suit against the Bank and that she had not understood that the Debtors had to get permission from the bankruptcy court before it could reimburse those expenses. She testified that she now understood that and that no further payments would be made without the requisite approval. Testimony from two other witnesses, daughters of the Debtors who performed bookkeeping functions for the Debtors, addressed payments made by the Debtors to Dodd and to other professionals (an engineer and a geologist) in connection with the Debtors' oil and gas operations. At the conclusion of the testimony, the court ordered disgorgement of approximately $36,000 from Dodd.
 
 
 9
 The court went on to state that the Disgorgement Motion "request[s] appointment of a Trustee under Section 1104 of the Bankruptcy Code" and ordered the United States Trustee to name a trustee immediately. Somewhat later, the court stated that "[t]here has been every indication there's been use of unauthorized cash collateral and all three people said they had no idea what that means." Counsel for the Debtors objected to the appointment of a trustee on the ground that it would seriously injure the Debtors and on the further ground that none of the usual reasons for appointing a trustee, other than the payment of approximately $36,000 in expenses to Dodd, had been heard. The court responded as follows:[E]verytime we come to Wichita Falls, we have three to four hours of extremely complicated hearings where alleged misdealings and misappropriations out of the estate funds are made....
 
 
 10
 . . . . .
 
 
 11
 I've got to have somebody that I can look to tell me, A, B, C, tell me what's being done, what's not being done, what's proper, what's not proper in this case.
 
 
 12
 Otherwise, we're going to have to add another day a month to come up here just to have Hester hearings, and I'm not going to do that.
 
 
 13
 During oral argument with a member of this panel, counsel for the Debtors and the Bank advised that the next item on the bankruptcy court's docket on February 1, 1990, was a motion (the "Cash Collateral Motion") filed by the Bank in November 1989 alleging that the Debtors had violated the terms of a cash collateral order entered by the bankruptcy court in August 1988 by making unauthorized payments to administrative priority claimants and to attorneys and other professionals without seeking prior court approval. Included in the alleged improper payments are several to the Debtors' bankruptcy counsel. The Cash Collateral Motion asks the court to segregate the Bank's collateral and to prohibit the Debtors from using the collateral without the Bank's specific prior authorization. The Cash Collateral Motion also asks for an accounting by the Debtors of their use of cash collateral, for the return of any unauthorized payments and, last of all, for the appointment of a trustee. This court was advised that the Debtors and the Bank were prepared to go forward on the Cash Collateral Motion and to present evidence, pro and con, on the matters covered by it and the various types of relief sought, including the appointment of a trustee. Needless to say, the hearing on the Cash Collateral Motion was aborted when the bankruptcy court appointed a trustee following the hearing on the Disgorgement Motion.
 
 
 14
 The trustee was appointed shortly after the entry of the Disgorgement Order and approximately 45 days before the Debtors' suit against the Bank was set for trial. A motion to the bankruptcy court for a stay of the Disgorgement Order was denied.
 
 
 15
 The Debtors turned then to the district court, filing a motion for a stay pending appeal of the Disgorgement Order. The motion began by noting that under section 1104 of the Bankruptcy Code, a trustee may be appointed in a Chapter 11 case only on motion of a party in interest or the United States Trustee and only after notice and hearing and only "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, ... or similar cause," 11 U.S.C. Sec. 1104(a)(1), or "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate," 11 U.S.C. Sec. 1104(a)(2). The motion alleges that the appointment of a trustee was made in the Disgorgement Order without a motion, without notice or a hearing, and without a showing of "cause" or that it was in the best interest of creditors or the estate. The motion went on to point out that, as might have been predicted for a number of reasons, including the imminence of the trial setting in the Debtors' suit against the Bank, the trustee so appointed had promptly entered into a compromise and settlement of the Debtors' suit against the Bank which involved the disposition of the major assets of the Debtors' estate. The motion alleged that the trustee and the Bank did not propose to comply with the Bankruptcy Code vis-a-vis the compromise in that the compromise had the effect of foreordaining the terms of a plan of reorganization without compliance with those sections in Chapter 11 of the Bankruptcy Code relating to the preparation of a plan and disclosure statement and the submission of the same to a vote of affected creditors and equity owners.[3] See In re Braniff Airways, 700 F.2d 935 (5th Cir.1983).
 
 
 16
 In the Order Denying Stay, the district court denied a stay of the Disgorgement Order. The court held that the notice of the possible appointment of a trustee given to the Debtors, specifically the sentence in the Disgorgement Motion alleging that cause existed for the appointment of a trustee and the request for other and further relief, satisfied constitutional due process requirements. On the subject of the appointment of a trustee, the court held that the appointment and the trustee's actions are reviewable upon appeal, and that the Debtors' allegation of lack of good cause, even if true, was therefore not sufficient to show a substantial threat of irreparable injury.
 
 
 17
 II. Jurisdiction.
 
 
 18
 We begin by noting that we lack jurisdiction over an appeal from the Order Denying Stay. The court of appeals exercises jurisdiction of "appeals from all final decisions, judgments, orders, and decrees" of the district courts in bankruptcy matters. 28 U.S.C. Sec. 158(d). Because the Order Denying Stay was not a final order, we lack jurisdiction of the appeal. See National Bank of Commerce v. Barrier (In re Barrier), 776 F.2d 1298 (5th Cir.1985). Additionally, we cannot review the Order Denying Stay pursuant to 28 U.S.C. Sec. 1292, governing interlocutory appeals, because the bankruptcy appellate scheme embedded in 28 U.S.C. Sec. 158 clearly supersedes 28 U.S.C. Sec. 1291, and, by inference, also supersedes section 1292. See Barrier, 776 F.2d at 1299.
 
 
 19
 Under this court's decision in Barrier, mandamus is the only remedy available to the Debtors seeking relief from the Order Denying Stay. Our decision in In re First South Savings Association, 820 F.2d 700, 707 (5th Cir.1987), sets forth the standard that we apply in considering applications for mandamus: "[w]hen a matter is entrusted to the discretion of the district court, mandamus will not issue absent a clear abuse of discretion amounting to a judicial usurpation of power." Treating the Debtors' notice of appeal and motion for stay of the Disgorgement Order as an application for a writ of mandamus directing the district court to enter a stay of the Disgorgement Order, we deny the application. Cf. Ramirez v. Rivera-Dueno, 861 F.2d 328, 334 (1st Cir.1988) ("While the district court's order is, therefore, not appealable, we exercise our discretion to treat defendants' appeal as a petition for mandamus under the All Writs Act."), cert. denied, sub nom. Quinones v. Lema-Moya, --- U.S. ----, 110 S.Ct. 73, 107 L.Ed.2d 40 (1989); In re Allen, 896 F.2d 416 (9th Cir.1990) ("We may construe an appeal [from a nonfinal or appealable bankruptcy court order] as a petition for a writ of mandamus.") For the reasons hereinafter set forth, we do not believe that it can be said that the district court engaged in a usurpation of judicial power in denying a stay of that order. In so holding, however, we note that certain procedural aspects of the Debtors' bankruptcy case cause us serious concern. We have already identified some, and we will address others briefly for whatever help that may provide to the district court in considering the appeal of the Disgorgement Order and the possible appeal of the order relating to the compromise of the Debtors' suit against the Bank.
 
 
 20
 III. Mandamus.
 
 
 21
 We turn now to the question whether the district court in entering the Order Denying Stay, a matter entrusted to its discretion, so clearly abused its discretion as to amount to a judicial usurpation of power. The Debtors point to three factors militating in favor of an affirmative answer to that question. First, they argue to us, as they did to the district court, that the appointment of the trustee was made without a motion,[4] without a hearing and without proper notice. Clearly, a strong case can be made for the Debtors' position. A comparison of the Disgorgement Motion with the Cash Collateral Motion following it on the docket, which specifically asked, inter alia, for the appointment of a trustee, supports the Debtors' argument. Furthermore, at the hearing on the Disgorgement Motion,[5] there is no indication that the bankruptcy court considered whether the level of mismanagement shown by the transfers to Dodd and others, when viewed in the context of the Debtors' overall management of the estate, was sufficient to warrant the expense, the major disruption and the change in direction of the case that would in all likelihood result from the appointment of a trustee. There is no indication that lesser remedies, such as those requested in the Cash Collateral Motion, were considered and rejected as inadequate.
 
 
 22
 The Debtors next argue that the appointment of a trustee was made without a showing of cause or that the best interest of the parties was thereby served, all as contemplated by section 1104(a) of the Bankruptcy Code. This argument is intertwined with the argument on the adequacy of the hearing. The Debtors recognize what they admitted at the hearing, i.e., that improper transfers had been shown. But whether such transactions amount to cause per se for the appointment of a trustee is a separate question. The opinion of the Court of Appeals for the Fourth Circuit in Committee of Dalkon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239 (4th Cir.1987), is instructive on this point. In Robins, there was ample evidence of the payment by the debtor of pre-petition claims without court approval or knowledge. The district court, however, refused to appoint a trustee under section 1104(a), choosing instead certain lesser remedies. The Fourth Circuit noted that the district court had made the correct inquiry:
 
 
 23
 The [district] court noted that a trustee is needed where fraud or mismanagement arise but stated that it did not find such problems in this case. Moreover, the court said:
 
 
 24
 As stated in In Re General Oil Distributors, Inc., 42 B.R. 402 (Bankr.1984) [sic], although the word "shall" in Section 1104(a) circumscribes the Court's discretion, the concepts of incompetence, dishonesty, gross mismanagement and even fraud all cover a wide spectrum of conduct. While under 1104(a)(1) the Court is not directly called upon to weigh the cost and benefits of appointing a trustee, it nevertheless cannot ignore competing benefit and harm that such appointment may place upon the estate. Coupled with those concerns is the overriding philosophy of Chapter 11, which is to give the debtor a second chance. Consistent with such a philosophy is this court's finding that current management should be permitted to identify and correct its past mistakes.
 
 
 25
 The court stated that it found the present management capable and amenable to a fair and expeditious plan to compensate claimants. The court further stated that the appointment of a trustee was neither "necessary [n]or desirable" and might "impede" present reorganization efforts.
 
 
 26
 Id. at 240-41.
 
 
 27
 The Fourth Circuit, like the district court, recognized that Robins' conduct was improper and warranted a civil contempt sanction. It stated:
 
 
 28
 But a policy of flexibility pervades the bankruptcy code with the ultimate aim of protecting creditors. A determination of cause, therefore, is within the discretion of the court and due consideration must be given to the various interests involved in the bankruptcy proceeding. "[T]he concepts of incompetence, dishonest, gross mismanagement and even fraud all cover a wide range of conduct..... Implicit in a finding of incompetence, dishonest, etc., for purposes of section 1104(a)(1), is whether the conduct shown rises to a level sufficient to warrant the appointment of a trustee." General Oil, 42 B.R. at 409. Obviously, to require the appointment of a trustee, regardless of the consequences, in the event of an act of dishonesty by the debtor, however slight or immaterial, could frustrate the purpose of the Bankruptcy Act. Section 1104(a)(1), therefore, must be construed, if possible, to make it harmonious with the Act in its entirety. Such a construction requires that the courts be given discretionary authority to determine whether conduct rises to the level of "cause."
 
 
 29
 Id. at 242. The Fourth Circuit concluded that the district court did not err in declining to find cause or abuse its discretion in refusing to appoint a trustee.
 
 
 30
 In this case, as in Robins, the transfers made by the Debtors could, but need not necessarily, amount to "cause." What was required was a determination by the bankruptcy court whether the incompetence and mismanagement evidenced by the transfers, in the context of the management and direction of the entire case, rose to a level sufficient to warrant the appointment of a trustee. Involved in that determination is a consideration whether lesser remedies would have sufficed. Arguably, the bankruptcy court considered all these factors in reaching its decision to appoint a trustee, but the record contains little indication of a broad-gauged evaluation.
 
 
 31
 Finally, the Debtors argue that irreparable injury will result if the appointment of the trustee is not stayed. They are particularly disturbed by the compromise of their suit against the Bank which took shape with remarkable speed and was approved by the bankruptcy court following extremely abbreviated notice. See note 3 supra. The district court noted that the actions of the trustee (including the compromise) are appealable, and a few unquestionably are. But many are not, and the overall sea-change in the case resulting from the appointment of a trustee may never be remedied--even if the appointment of the trustee is ultimately reversed on appeal.
 
 
 32
 In summary, the district court may have been wrong in deciding not to stay the appointment of the trustee. To put it somewhat differently, had we been in the district court's place, we might have exercised the discretion vested in that court differently than the district court exercised it. But mandamus is not a means of correcting the district court's unappealable orders, assuming arguendo that correction is needed. Ramirez v. Rivera-Dueno, 861 F.2d at 334 ("[W]e do not readily utilize the writ of mandamus as a means of correcting a district court's unappealable orders."); Powers v. Chicago Transit Auth. 846 F.2d 1139, 1143 (7th Cir.1988). Mandamus is, instead, "an extraordinary remedy, to be reserved for extraordinary situations." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988); see generally In re United States Dept. of Defense, 848 F.2d 232 (D.C.Cir.1988). If the district court erred here, we cannot say that it amounted to a judicial usurpation of power.
 
 
 33
 Although we are concerned with what may be several instances of arbitrary action by the bankruptcy court, we note that as an appellate court, two levels removed from the events described in this opinion, we are in no position to assess the merits of the bankruptcy court's decisions. We neither express, nor intimate, any views whatsoever on the merits. The bankruptcy court functions as an adjunct of the district court and, indeed, the constitutionality of the bankruptcy court's jurisdiction rests on that fact and on the careful supervision that the district court is bound to provide over the bankruptcy court. It is to the district court that bankruptcy court litigants must turn in the first instance for careful review of the bankruptcy court's actions.[6]
 
 
 34
 IV. Conclusion.
 
 
 35
 Treating the Debtors' notice of appeal and motion for stay of the Disgorgement Order as an application for a writ of mandamus, it is denied.
 
 
 36
 Temporary stay VACATED; petition for mandamus DENIED.
 
 
 
 [1]
 The circumstances surrounding Dodd's appointment as counsel for the Debtors in their suit against the Bank and the bankruptcy court's decision to vacate that appointment are, to say the least, another curious aspect of this case. The parties report that in 1987, after the Debtors' bankruptcy case was filed, the bankruptcy court apparently signed an order authorizing Dodd to represent the Debtors in their suit against the Bank. For some unknown reason, that order was never entered on the bankruptcy court's docket. However, Dodd proceeded to prepare the case for trial, spending (according to bankruptcy counsel for the Debtors) several hundred hours on that project. In November 1989, the Bank alleged, whether by motion or ore tenus is unclear, that Dodd had a conflict of interest in that he had represented the Debtors' daughters when their depositions were taken. No hearing was held on the Bank's allegations. Instead, the bankruptcy court, when presented with the Bank's allegations and told that its order appointing Dodd had never been entered, simply vacated the order of appointment, leaving the Debtors without representation in their suit against the Bank. See 11 U.S.C. Sec. 327(e). The bankruptcy court, when asked whether its decision to vacate Dodd's appointment meant that Dodd could no longer represent the Debtors in the district court suit, is reported to have responded that it was not up to the bankruptcy court to say who could practice before the district court. Apparently, Dodd has continued in his role as counsel for the Debtors in the district court. The trustee for the Debtors' estate, appointed under the circumstances described in the text infra, evidently sought Dodd's advice and counsel in connection with the proposed settlement of the Debtors' suit against the Bank, also described infra. In spite of the fact that Dodd is no longer authorized to represent the Debtors' estate in the suit, the trustee is critical, in his response to the Debtors' motion pending before this court, of the fact that Dodd (because of a family crisis) has not responded to the trustee's request for his help in investigating the suit and determining its worth
 
 
 [2]
 The Debtors attached Dodd's statement of expenses to their answer. Included therein is an item likely to cause apoplexy to a bank defending a lender liability suit--$475 for a seminar entitled "The Prosecution and Defense of a Lender Liability Lawsuit."
 
 
 [3]
 A subsequent motion filed by the Debtors in the bankruptcy court, seeking a continuance of the hearing on the trustee's motion to compromise the Debtors' claim against the Bank and others, notes that on March 21, 1990, the bankruptcy court had granted an ex parte motion shortening the time for notice of the hearing on the compromise from twenty days, as contemplated by Bankruptcy Rule 2002(a), to seven days. Bankruptcy Rule 9006(c) permits the bankruptcy court "for cause shown" in its discretion, with or without motion or notice, to reduce the notice period, and ex parte motions for material reductions in the notice period are routinely granted by bankruptcy courts. That practice greatly increases the potential for the elimination of effective notice of a hearing; and even where notice is received, the time required for preparation of an adequate response is virtually lost, all to the benefit of the movant and to the severe detriment of any party in interest taking a position adverse to that of the movant. The exhortations of Timbers notwithstanding, bankruptcy courts should review ex parte motions to reduce the notice period carefully to be certain that there is, indeed, good cause for the handicap to the respondents and to the court's information-gathering capacity that is likely to result. In the case at hand, the motion seeking a continuance of the hearing argued that the combination of a shortened notice period and inadequate disclosure of the effect of the compromise on the Debtors' estate could be extremely destructive of the estate and the interests of all parties in interest except the Bank. The motion for a continuance was denied
 
 
 [4]
 If the district court concludes that the Disgorgement Motion did not request the appointment of a trustee with sufficient particularity to satisfy section 1104(a) of the Bankruptcy Code, then the court will be required to address the issue whether a bankruptcy court can sua sponte appoint a trustee, a question not yet decided in this circuit. See 5 Collier on Bankruptcy 1104.01 (15th ed. 1989); Cournoyer v. Town of Lincoln, 790 F.2d 971, 972 n. 1 (1st Cir.1986)
 
 
 [5]
 One reason, perhaps, that the hearing was so circumscribed can be traced to what may have been the lawyers' belief that all those factors would be explored at the hearing on the Cash Collateral Motion to be held immediately after the hearing at issue here
 
 
 [6]
 We suggest, but suggest only, that the Debtors' appeal of the Disgorgement Order be given expedited review by the district court so as to minimize the damage to the Debtors' case that may result from the appointment of a trustee if that appointment was erroneous