In re Andrew Bass PHILLIPS, Debtor.

Andrew Bass PHILLIPS, Plaintiff,

v.

The FEDERAL DEPOSIT INSURANCE CORPORATION in its Limited Capacity as Receiver for Charles Schreiner Bank, N.A., Defendant.

Bankruptcy No. 90–51042–C.
Adv. No. 90–5245–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 15, 1991.

Harry Perrin, Houston, Tex., for debtor and plaintiff.

Nancy Reyes, F.D.I.C., San Antonio, Tex., for defendant.

## DECISION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the Rule 12(b)(6) motion of the Federal Deposit Insurance Corporation, in its corporate capacity liquidating Charles Schreiner Bank, N.A. to dismiss the complaint for failure to state a claim upon which relief can be granted. Subsequent to the hearing, the parties submitted briefs. Upon consideration thereof, the court makes the following findings and conclusions.

## FACTUAL BACKGROUND

Andrew Bass Phillips ("Phillips") for many years has been engaged in the real estate brokerage and development business near Kerr County, Texas. Charles Schreiner Bank, N.A. ("CSB") financed many of Phillips' real estate projects. The adversary complaint contains a detailed list of loans made by CSB to Phillips, Phillips' guaranties of loans made by CSB to third parties and loans made by CSB to entities to which Phillips had a direct and primary liability to CSB as a general partner or joint venturer.

A number of disputes arose between Phillips and CSB regarding their lending relationship. Consequently, in January of 1989, Phillips sued CSB in United States District Court alleging (i) violations of 18 U.S.C. § 1961 *et seq.* ("RICO"), (ii) violations of 12 U.S.C. § 1972 *et seq.* (the "Bank Tying Act"), (iii) violations of Texas usury law, and (iv) other claims grounded in state statutory and common law. CSB acknowledged that the alleged RICO, Bank Tying Act and usury causes of action arose out of the lending relationship between Phillips and CSB. Subsumed within the lending relationship were those promissory notes, guaranties and Phillips' direct liabilities to CSB as a partner or joint venturer as more particularly described in the adversary complaint.

During this case, the parties became embroiled in a discovery battle. *See Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 129 (5th Cir.1990). In preparation for defending foreclosure proceedings believed to be initiated by CSB, Phillips moved for expedited discovery. *See id.* On March 7, 1989, the district court granted Phillips' motion and set stringent discovery deadlines. *See id.* On March 13, CSB moved for reconsideration of the March 7 order and assured the court that it would seek only judicial foreclosure.[1] *See id.* When the court did not act on this motion, CSB again moved to extend the discovery deadlines. On May 3, Phillips moved for an expedited trial setting because of CSB's

initiation of foreclosure proceedings,[2] and moved the court to compel the production of certain documents. *See id.* On May 5, the court granted Phillips' motion to compel production but extended the discovery deadlines per CSB's request.[3] *See id.*

In July 1989, CSB moved for summary judgment on the RICO, Bank Tying Act and usury causes of action and requested the district court to dismiss the remaining pendent state law claims for lack of subject matter jurisdiction. The district court granted CSB's motion on January 25, 1990, effectively entering judgment on the merits against Phillips on the RICO, Bank Tying Act and usury claims and dismissing the remaining state law causes. Prior to the entry of the district court's judgment, CSB did not counterclaim against Phillips on the notes, guaranties and other direct liabilities of Phillips.[4] Neither CSB nor Phillips appealed the district court's judgment, and the time within which to perfect an appeal has passed.

### Outline of Arguments

Phillips filed its voluntary Chapter 11 petition on April 3, 1990,[5] and on August 2, 1990, pursuant to the R.Bankr.P. 3007 and 7001, Phillips filed this adversary complaint requesting a declaration that the claims held by the FDIC in its limited capacity as receiver for CSB, together with liens securing such claims, if any, are void and unenforceable against the debtor and the bank-

---

1. CSB twice made this representation: once by its counsel's statement during Phillips' deposition that any foreclosure on certain collateral would occur through a court proceeding and once through CSB's representation in its motion to reconsider and reply in opposition to the motion for expedited discovery that CSB would not seek to foreclose upon any portion of the properties made the subject of Phillips' complaint except through judicial foreclosure and a judicial determination of the rights in and to the subject properties.

2. On April 25, 1989, CSB filed suit in Texas state court seeking judicial foreclosure on some of Phillips' encumbered properties. On April 26, CSB notified Phillips by letter that it intended to foreclose on his home. The letter did not indicate whether CSB would seek judicial or nonjudicial foreclosure on the home. *See id.*

3. The May 5th order which was drafted by Phillips' trial counsel included an *ex parte* injunction which prohibited CSB from taking any further action in any state or federal court to attempt to foreclose until the conclusion of trial on the merits. *See Phillips v. Chas. Schreiner Bank*, 894 F.2d at 129. The *ex parte* injunction was subsequently reversed by the United States Court of Appeals for the Fifth Circuit. *Id.* at 132.

4. CSB did not believe such counterclaim was necessary because it had initiated foreclosure proceedings in state court.

5. Subsequent to the bankruptcy filing, the FDIC became the successor in interest to CSB and, shortly thereafter, filed a notice of removal of the state court action to the federal district court on May 18, 1989.

ruptcy estate under applicable federal law.[6] Phillips' complaint is premised on Federal Rule of Civil Procedure 13(a) which states that a counterclaim is compulsory in a federal court action if it arises out of the same transaction or occurrence as the subject matter of the opposing party's claim. Phillips maintains that because CSB admitted that the RICO, Bank Tying Act and usury claims arose out of the same lending relationship between CSB and Phillips and because any claims which CSB had against Phillips as a result of that lending relationship were not asserted as counterclaims in the first district court action, the FDIC, as receiver for CSB, is now precluded from asserting such claims.

Subsequently, the FDIC filed this motion to dismiss the complaint for failure to state a claim upon which relief can be granted asserting that the compulsory counterclaim rule does not require a lender to counterclaim to collect a debt. The FDIC further contends that the previous district court action has no *res judicata* effect on CSB or the FDIC and does not bar the FDIC's claims against Phillips. Alternatively, the FDIC argues that if the claims were compulsory and were waived by not being asserted in the lender liability action, such a waiver is not binding against the FDIC because the FDIC is entitled to the protection of a holder in due course under federal common law. Finally, the FDIC maintains that any agreement or representation made by CSB that it would forebear from nonjudicial foreclosure is not binding on the FDIC under *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447,

62 S.Ct. 676, 86 L.Ed. 956 (1942), its progeny and 12 U.S.C. § 1823(e).

In response, Phillips counters that the exemption to the compulsory counterclaim rule set forth under Texas law does not apply to the FDIC in this case and that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), which Act binds the FDIC to abide by final judgments of the district court, effectively overrides the FDIC's *D'Oench, Duhme* and § 1823(e) arguments, thus barring the FDIC's claims.

■ At the hearing the court queried the application of the doctrine of judicial estoppel. Subsequently, the parties briefed that issue as well as the application of the election of remedies doctrine.[7]

### DISCUSSION

■ Federal Rule of Civil Procedure 13(a) (the compulsory counterclaim rule) provides that a pleading must state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. Fed. R.Civ.P. 13(a). Any counterclaim which is compulsory and is not brought in the pending action prior to judgment, is barred from being asserted in a subsequent action. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). Phillips' RICO, Bank Tying Act and usury causes of action arose directly out of the customer-lender relation-

---

**6.** The "claims" held by CSB or the FDIC are meant to be any claims arising out of the lending relationship which were not asserted in the federal court action, be it collection (foreclosure) or some other claim.

**7.** The court acknowledges that other arguments can be made both in favor of the 12(b)(6) motion and in favor of Phillips' complaint. It is questionable whether this court has the capacity to render the ultimate relief sought in this adversary action because such a judgment, purporting to bar an action pending in another court, would be vulnerable as a collateral attack. *See Hooks v. Hooks*, 771 F.2d 935, 949

(6th Cir.1985); *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 872 (5th Cir.1984). On the other hand, the FDIC violated the automatic stay established by the bankruptcy filing when it removed the state collection and foreclosure action to federal court post-petition without relief from stay. *See* 11 U.S.C. § 362(a)(1); R.Bankr.P. 9027(a)(2). The Fifth Circuit has held that such violation is voidable, i.e., that the notice should be dissolved and the case remanded to state court. *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989). However, as the parties did not raise these issues, this court elects not to reach them.

ship between Phillips and CSB, and those claims directly attacked the notes that Phillips executed in CSB's favor. *See Howe v. Vaughan (Matter of Howe)*, 913 F.2d 1138, 1144–45 (5th Cir.1990). Thus, CSB was required to bring suit on those notes in the district court action prior to entry of final judgment or be forever barred from pursuing those claims. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. at 469 n. 1, 94 S.Ct. at 2506 n. 1. However, the FDIC presents several arguments why the compulsory counterclaim rule does not bar these claims.[8]

### I. Exception to Compulsory Counterclaim Rule

 The Federal Rules of Civil Procedure are procedural in nature and are not meant to govern or grant substantive rights. "Procedure" is the "judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Hanna v. Plumer*, 380 U.S. 460, 464, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965) (citing *Sibbach v.*

*Wilson & Co.*, 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941)). Although the compulsory counterclaim rule is procedural in nature, the case law has carved out at several "exceptions"[9] to the rule, only one of which is applicable in this case.[10]

Under Texas law, a borrower cannot force a lender to elect from the remedies available to it under the transaction or to waive any of its remedies by merely filing a lawsuit attacking the collectability of the debt. *See Thurman v. Federal Deposit Ins. Corp.*, 889 F.2d 1441, 1444 (5th Cir. 1989).[11] *Thurman* stated that "under Texas law when a borrower files an action attacking the collectability of a secured debt, the compulsory counterclaim rule does not require the secured party to counterclaim to collect on the debt *if* he has chosen to exercise his bargained for right to pursue extra-judicial foreclosure." *Thurman*, 889 F.2d at 1444 (emphasis added). *Thurman* recognized that a lender has various remedies available to it under a note and adopted the reasoning of a Texas case, *Kaspar v. Keller*, which precluded a borrower from compelling the lender to

---

**8.** In a Rule 12(b)(6) motion, the court must construe the challenged pleading in a light most favorable to the plaintiff and must accept as true all well pleaded factual allegations and reasonable inferences therefrom. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *In re Longhorn Securities Litigation*, 573 F.Supp. 255, 264–65 (W.D.Okl. 1983). This court is obligated to determine whether the plaintiff's allegations support relief on any possible theory. *See Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1375 n. 5 (10th Cir.1980); *Robertson v. Johnston*, 376 F.2d 43, 45 (5th Cir.1967).

Rule 12(b) provides that a 12(b)(6) motion shall be treated as a motion for summary judgment if the court is presented matters outside of the pleadings which are not excluded by the court. Fed.R.Civ.P. 12(b); *see also Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1250 n. 14 (9th Cir.1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). Nothing in the rule prohibits the court from treating the motion as one for summary judgment when no outside matters are presented. In fact, that is essentially what a 12(b)(6) motion is functionally. Thus, this court will treat the FDIC's motion as a motion for summary judgment.

**9.** The case law does not so much expressly create exceptions to the compulsory counterclaim rule as it describes what is "not compulsory."

**10.** Rule 13 itself states four exceptions to the counterclaim rule. A claim is not compulsory if: 1) it is not matured at the time the party is served with pleadings; 2) it requires the presence of a third party over whom the court cannot acquire jurisdiction; 3) at the time the action is commenced, the claim is the subject of another pending action; and 4) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment of that claim and the pleading does not state any counterclaim under Rule 13. Fed. R.Civ.P. 13. Clearly exceptions two and four are not applicable to this case. There are no facts presented in favor of or against exception one. Exception three is not applicable because the claim for collection and foreclosure was not pending when the RICO, Bank Tying Act and usury claims commenced. The non application of the third exception is further addressed below in Section IV.

**11.** Although the *Thurman* court addressed the compulsory counterclaim rule as applied in Texas Rule of Civil Procedure 97(a), it was the underlying *substantive* state law regarding mortgages which created the exception to the counterclaim rule. The exception should apply with equal force to suits originated in federal court.

pursue a judicial foreclosure remedy through a counterclaim by merely filing an action to cancel the note. *See Thurman,* 889 F.2d at 1445 (citing *Kaspar v. Keller,* 466 S.W.2d 326, 329 (Tex.Civ.App.–Waco 1971, writ ref'd n.r.e.)). *Kaspar* stated that:

> the mortgagor should not be permitted to destroy or impair the mortgagee's contractual right to foreclose under the power of sale by the simple expedient of instituting a suit, whether groundless or meritorious, thereby compelling the mortgagee to abandon the extra-judicial foreclosure which he had the right to elect, nullifying his election, and permitting the mortgagor to control the option as to the remedies.

*Kaspar,* 466 S.W.2d at 329. The court's reasoning for the rule was that the power of sale in a deed of trust is a valuable contract right which cannot be impaired by any subsequent act of the mortgagor. *Id.* at 328 (quoting *Hampshire v. Greeves,* 104 Tex. 620, 143 S.W. 147, 150 (1912)). The court also reasoned that the rules of civil procedure shall not enlarge or diminish any substantive rights or obligations of any parties to any civil action. *Id.* at 329; Tex. Rule Civ.P. 815; *see also* 28 U.S.C. § 2072.[12] Following the logic of *Kaspar,* the court in *Stille v. Colborn* specifically construed the language found in a deed of trust to allow the lender the option of commencing one remedy (non-judicial foreclosure), and before completion, change to the other. *Stille,* 740 S.W.2d 42, 44 (Tex. App.—San Antonio 1987, writ denied).[13]

Phillips argues that the language in *Thurman* and *Kaspar* imply that if a lender waives its right to non-judicial fore-closure, it must file compulsory counter-claims in the borrower's action in order to pursue judicial foreclosure to collect on the debt and that, because CSB failed to assert its counterclaims in the prior action it (or the FDIC) is now barred from doing so. The FDIC asserts that none of CSB's "menu of remedies" [14] are barred based on the fact that they were excluded as counterclaims in the prior suit because *Thurman* creates an exception to the counterclaim rule which applies to CSB and the FDIC.

This court does not take issue with the holdings or rationales in the above cited authorities, but rather questions the FDIC's application of these cases to the present case. In *Thurman,* the secured party chose to exercise its bargained for right of extra-judicial foreclosure, not the right of judicial foreclosure as allegedly chosen by CSB. In both *Kaspar* and *Stille,* the lender had yet to choose the remedy it would pursue, leaving it the option to chose extra-judicial foreclosure—an option which CSB is alleged to have waived. Although according to *Kaspar* the commencement of a suit itself may not alter the contractual relationship of the parties, the reasoning in *Kaspar* confirms that the rule is different when the *lender* elects to pursue one of two mutually exclusive remedies or waives one of those remedies. *Thurman* applies to prevent a borrower from depriving a lender of choice. It does not protect a lender from the consequences of choices voluntarily made. We turn then to a consideration of the doctrines of election of remedies and waiver to see whether the facts, as construed in a

---

**12.** Federal rules which may incidentally affect a litigant's substantive rights do not violate this theory if they are necessary to maintain the integrity of the system of rules. *Burlington Northern R.R. Co. v. Woods,* 480 U.S. 1, 5, 107 S.Ct. 967, 969, 94 L.Ed.2d 1 (1987).

**13.** Under Texas law a mortgagee may either sell property via non-judicial foreclosure pursuant to express powers granted in a deed of trust or bring a judicial foreclosure action. *See* Tex. Prop.Code Ann. § 51.002 (Vernon Supp.1991). Judicial foreclosure and foreclosure under the power of sale in a deed of trust are remedies which cannot be concurrently prosecuted.

*Gandy v. Cameron State Bank,* 2 S.W.2d 971, 973 (Tex.Civ.App.—Austin 1927, writ ref'd).

**14.** According to the FDIC, this menu includes: the right to sue on the note; the right to sue on a guaranty; the right to institute judicial foreclosure proceedings; the right to pursue a deficiency, if any, after foreclosure against the maker of the note; the right to pursue a deficiency, if any, after foreclosure pursuant to guaranty agreements; the right to choose when and which of these remedies to pursue; the right to pursue any remedy without waiving the right to pursue any other remedies; and the right to file suit in Kerr County.

light most favorable to the Phillips, support a finding that CSB voluntarily chose to pursue either its extra-judicial or its judicial right to foreclosure.

## II. Election of Remedies and Waiver

■ An election of remedies does not occur unless a party has two or more inconsistent remedies and pursues one of them to the exclusion of the others. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980).[15] The election of remedies doctrine may constitute a bar to relief when one successfully exercises an informed choice between two or more remedies which are so inconsistent as to constitute manifest injustice. *Bocanegra*, 605 S.W.2d at 851 (citing *Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas*, 491 S.W.2d 869 (Tex.1973)). The doctrine is designed to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong. *Fina Supply, Inc. v. Abilene National Bank*, 726 S.W.2d 537, 541 (Tex.1987). The doctrine works to prevent double recovery and to preclude a litigant from pursuing a remedy, which in a previous action, he rejected in favor of an alternative and inconsistent remedy. *United States v. Thomas*, 709 F.2d 968, 971 (5th Cir.1983). *Thomas* listed three essential elements to finding an election of remedies: 1) existence of two or more remedies; 2) inconsistency of such remedies; and 3) a choice of one of the remedies. *Thomas*, 709 F.2d at 971 (citing 25 Am.Jur.2d *Election of Remedies* §§ 8, 22, 23 (1966); 1B J. Moore, Moore's Federal Practice ¶ 0.4057[7] ). With respect to judicial foreclosure, an election of remedies does not occur unless a judgment of foreclosure is obtained. *Benskin v. Barksdale*, 246 S.W. 360, 364 (Tex.Comm'n App.1923, opinion adopted).

■ The FDIC correctly claims that because CSB has yet to actually obtain judicial foreclosure, CSB has not successfully exercised its rights to judicial foreclosure as required by *Bocanegra* and *Benskin*, so that the election of remedies doctrine does not apply in this case. There is no possibility of double recovery. To trigger an election of remedies, one must elect, pursue *and obtain* a remedy, then later attempt to assert a different, inconsistent one. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d at 851.

■ Although Phillips does not contend that CSB in fact obtained a particular remedy and now seeks (through the FDIC) double recovery through a different, inconsistent remedy, he does contend that CSB expressly waived its right to pursue non-judicial foreclosure and that by such waiver CSB essentially elected to pursue judicial foreclosure. Phillips alleges that CSB waived its right to pursue non-judicial foreclosure on two occasions, by way of representations to the United States District Court.[16]

Waiver is the voluntary or intentional relinquishment of a known right. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Phyfer v. San Gabriel Development Corp.*, 884 F.2d 235, 240 (5th Cir.1989). Construing the facts in a light most favorable to Phillips, CSB's representations serve to relinquish its bargained-for right to non-judicial foreclosure and, therefore, constitutes a waiver. That waiver is enough to keep the rule in *Thurman* from applying to CSB. The facts alleged by Phillips indicate that Phillips did not force judicial foreclosure, but rather that CSB unilaterally waived its bargained for right to extra-judicial foreclosure. If such waiver is proven, then the rule espoused in *Kaspar*, *Thurman*, and *Stille* is not triggered here. If CSB was forced to

---

**15.** Election is often confused with or likened to judicial estoppel, equitable estoppel, ratification, waiver or satisfaction. *Id.* at 850.

**16.** In fact, when the district court entered an order which prohibited CSB from pursuing any type of foreclosure, CSB pursued its right to foreclose (be it judicially or extra-judicially) all the way to the Fifth Circuit and was successful.

The FDIC is hardpressed to argue that CSB's pursuit of the state court collection and foreclosure action does not evidence a desire to accomplish judicial foreclosure. As successor in interest to CSB, the FDIC's removal of the state court action without receiving relief from the automatic stay likewise supports an intention to pursue judicial foreclosure.

file judicial foreclosure, it was only because CSB waived its other option, not because Phillips filed his RICO, Bank Tying Act and usury claims. Thus, the *Thurman* rule will not bar application of the compulsory counterclaim rule to CSB.[17]

### III. Judicial Estoppel

At the hearing on this motion, this court questioned whether the doctrine of judicial estoppel applies to this case. Judicial estoppel is a common law principle which generally operates to preclude a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation. *Brandon v. InterFirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988); *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Windham*, 668 F.Supp. 578, 579 (E.D. Tex.1987); *USLIFE Corp. v. U.S. Life Ins. Co.*, 560 F.Supp. 1302, 1304–05 (N.D.Tex. 1983). The doctrine is intended to protect the integrity of the judicial process by preventing a party from "playing fast and loose" with the courts in order to suit its own purposes. *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir.1982); *Scarano v. Central R.R. Co. of New Jersey*, 203 F.2d 510, 513 (3rd Cir.1953); *USLIFE Corp.*, 560 F.Supp. at 1304–05.

The doctrine generally applies in cases where a party attempts to contradict his own sworn statements made in prior litigation. *USLIFE Corp.*, 560 F.Supp. at 1305. To the extent that sworn statements are involved, the doctrine upholds the public policy which exalts the sanctity of oath. "The object is to safeguard the administration of justice by placing a restraint upon the tendency to reckless and false swearing and thereby preserve the public confidence in purity and efficiency of judicial proceedings." *Konstantinidis v. Chen*, 626 F.2d 933, 973 (D.C.Cir.1980) (citing *Melton v. Anderson*, 32 Tenn.App. 335, 339, 222 S.W.2d 666, 669 (1948)). However, the inconsistency need not arise in a sworn statement of a party because the doctrine may be invoked to prevent a party from manipulating the court for self serving reasons. *See Konstantinidis v. Chen*, 626 F.2d at 937 (citing *Scarano*, 203 F.2d at 513).

The judicial estoppel doctrine also requires an affirmative position to have been taken by the party to be estopped and requires that position to have been successfully maintained. *Moore v. United Services Auto. Ass'n*, 808 F.2d 1147, 1153 n. 6 (5th Cir.1987); *USLIFE Corp.*, 560 F.Supp. at 1305; *In re Mitchell*, 80 B.R. 372, 379 (Bankr.W.D.Tex.1987). Prior success does not mean that the party against whom the judicial estoppel is to be invoked must have prevailed on the merits. "[R]ather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir.1988) (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n. 5 (6th Cir.1982)).

The rationale for the requirement of prior success lies in the risk of inconsistent results. *USLIFE Corp.*, 560 F.Supp. at 1305 (citing C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4477 (1981)). In the absence of judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results is present. *USLIFE Corp.*, 560 F.Supp. at 1305.

This last observation (i.e., the possibility of inconsistent results) removes judicial estoppel *per se* from application to this motion. Assuming all of the other requirements for the doctrine are met, the FDIC would only be judicially estopped from asserting *in a subsequent judicial proceeding* a position inconsistent with that taken in the prior proceeding. In the initial litigation, the FDIC's predecessor, CSB, successfully asserted[18] the position that it would

---

**17.** Or to the FDIC. *See* discussion *infra* at Sections V and VI.

**18.** The FDIC claims that, because the representations regarding waiver of nonjudicial foreclosure were made in a motion and in an attorney's statement in a deposition and not in sworn statements, the doctrine of judicial estoppel does not apply. The FDIC also argues that because the prior lawsuit was a lender liability action and did not adjudicate the validity or scope of CSB's foreclosure rights, CSB could not

not seek nonjudicial foreclosure. In the current litigation now pending before the district court in the removed state litigation, the FDIC, successor to CSB, seeks *judicial* foreclosure. A successful assertion of that position would not be foreclosed by CSB's averments in the prior litigation, as a judgment of judicial foreclosure would not be inconsistent with CSB's previous assurances that it would not pursue *non* judicial foreclosure. The *raison d'etre* for the judicial estoppel rule is not present here. *See USLIFE Corp.*, 560 F.Supp. at 1305.

That CSB's alleged waiver will not support judicial estoppel does not mean that it is of no moment, however. In the context of this case, that waiver, coupled with CSB's failure to assert its judicial foreclosure action as a counterclaim in the initial litigation, will support a finding of *res judicata* as a bar to further pursuit of the pending litigation. We turn to that issue next.

### IV. Res Judicata

For the theory of *res judicata* to prevail as a bar to the FDIC's assertion in subsequent litigation of a claim which should have been asserted as a compulsory counterclaim in prior litigation, there must be a showing that the prior litigation 1) was a final judgment on the merits 2) involving the same parties (or their privies) 3) which arose from the same cause of action. *Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 668 F.Supp. at 581 (citing *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)). No one questions that elements two and three apply here. However, the FDIC contends that element number one is lacking, for several reasons. The FDIC argues that the prior judgment has no preclusive effect (1) because the prior case was disposed of through partial summary judgment, (2) because CSB did not have the opportunity to appeal the district court judgment and (3)

because the district court declined to exercise pendent jurisdiction over the state law claims. Each of these arguments is addressed *seriatim.*

■ The FDIC first argues that its claims are not barred because the district court merely disposed of the prior case through partial summary judgment. The FDIC offers Fifth Circuit authority holding that partial summary judgments are not sufficiently final to be accorded *res judicata* effect. *See Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269–71 (5th Cir.1986); *Golman v. Tesoro Drilling Corp.*, 700 F.2d 249, 253 (5th Cir.1983) (order granting partial summary judgment is interlocutory; it has no *res judicata* or collateral estoppel effect); *United States v. Horton*, 622 F.2d 144, 148 (5th Cir.1980) (ruling on motion for partial summary judgment is not immutable and has no *res judicata* effect). Partial summary judgments are given no *res judicata* effect because they do not finally dispose of all issues. *Avondale Shipyards, Inc.*, 786 F.2d at 1269 (citing 2 J. Moore, Moore's Federal Practice ¶ 5620[3.–4] ). However, in this case, the district court's judgment did dispose of all issues and all parties because the judgment also dismissed the remaining issues. The district court's partial summary judgment thus became a final judgment and, in the absence of an appeal, is binding on all parties. *See Sandidge v. Salem Offshore Drilling Co.*, 764 F.2d 252, 255 (5th Cir.1985); *Southeast Nursing Home, Inc. v. St. Paul Fire and Marine Ins. Co.*, 750 F.2d 1531, 1539 n. 11 (11th Cir.1985).

■ The FDIC next proposes that if a party does not have the opportunity for appellate review of a judgment, that party cannot then be bound by such judgment. *See First Colonial Corp. of America v. American Benefit Life Ins. Co. (Matter of First Colonial Corp. of America)*, 693

have prevailed on a question of what foreclosure rights were available to it, so that judicial estoppel should not apply. Finally, the FDIC argues that, even were the court to determine that judicial estoppel applies, the only position from which the FDIC might be estopped

from taking is that which CSB presented in the prior litigation—that it would *not* pursue *non* judicial foreclosure. As the final argument is dispositive, we do not reach the other two contentions, other than to note that they do not appear to be well-taken.

F.2d 447, 449–50 n. 5 (5th Cir.1982), *cert. denied*, 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *Cf. Standefer v. United States*, 447 U.S. 10, 22, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689 (1980) (fair opportunity to litigate is prerequisite to estoppel). The FDIC then asserts that CSB did not have an opportunity to appeal the prior judgment because it was the prevailing party. True, one may not appeal an issue upon which one prevailed, absent exceptional circumstances. *Id.* However, the case upon which the FDIC relies, *First Colonial*, does not even imply that a party would not be bound by a judgment simply because it was the prevailing party. It is not the bare inability to appeal which triggers the exception to the *res judicata* rule but the inherent unfairness that an inability to appeal a given decision might impose on a party in certain unique situations not present here. *See, e.g. Hester v. NCNB Texas Nat'l Bank (Matter of Hester)*, 899 F.2d 361, 367 (5th Cir.1990) (because order denying stay pending appeal was unappealable, interim actions may never be remedied); *Cf. Matter of Sullivan Central Plaza I, Ltd.*, 914 F.2d 731, 733 n. 5 (5th Cir.1990) (cautioning that stays pending appeal should be carefully weighed by trial courts, bearing in mind the threatened loss of appellate review that may result from their denial because of the impact of the mootness doctrine on a pending appeal).

The FDIC cannot legitimately maintain that CSB did not have a fair opportunity to litigate its position in the previous litigation. *Standefer v. United States, supra.* There is nothing unfair about a party not being able to appeal a judgment rendered in its own favor. CSB was satisfied with the district court judgment and had no reason to appeal. CSB's having had a fair opportunity to litigate its position, that judgment may now be binding.

Finally, the FDIC proposes that CSB could at best be precluded from relitigating any of the claims which were dismissed or which could have been asserted to confer federal question jurisdiction upon this court. The FDIC presents authority to the effect that a jurisdictional dismissal is a decision on the merits only of the claims alleged to confer jurisdiction and that such a judgment only bars relitigation by the plaintiff of those issues actually decided or which could have been raised in the determination of jurisdiction. *See Bullard v. Webster*, 679 F.2d 92, 93 (5th Cir.1982); *Equitable Trust Co. v. Commodity Futures Comm'n*, 669 F.2d 269, 272 (5th Cir. 1982). The FDIC then offers authority that *res judicata* does not bar CSB (or the FDIC) from litigating state law claims which were or which might have been made in the dismissed action, specifically that CSB or the FDIC is not barred from litigating its state law claims against the various makers of notes or guarantors. *See* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4436 (1981); *see also Disher v. Information Resources, Inc.*, 873 F.2d 136, 139–40 (7th Cir.1989) (refusal to exercise pendent jurisdiction precludes *res judicata* application to state law claims); *Air Line Pilots Ass'n Int'l v. Texas Int'l Airlines, Inc.*, 567 F.Supp. 66, 72–74 (S.D.Tex.1983) (refusal to exercise jurisdiction establishes conclusive effect only on federal jurisdiction issues).

The FDIC's arguments misstate the procedural posture of this case relative to the previous litigation. Only Phillips' pendent state law claims were dismissed for want of jurisdiction. There was no jurisdiction dismissal of the RICO, Bank Tying Act and usury claims, and *res judicata* applies to those actions and all counterclaims which were compulsory to *those* actions. No one questions that Phillips could not later assert his (dismissed) state law claims against CSB or its successor in interest. That is not the issue here. What is at issue is the FDIC's ability to assert *its* state law claims against Phillips, claims which were *not*, but which could have been, asserted by CSB in the prior action, in response to the RICO, Bank Tying Act and usury claims. *Cf. Matter of Howe*, 913 F.2d at 1144–45 (loan transaction was at heart of litigation and was source of bank's claim against debtor's estate and usury claim and claim to void chattel mortgage were based on "same nucleus of operative facts"). These latter claims of Phillips were decided on the mer-

its. The subsequent assertion of these collection and judicial foreclosure claims in a later proceeding is precisely what the compulsory counterclaim rule contemplates preventing, yet is precisely what CSB did, and what the FDIC continues to pursue.

The court recognizes that a claim is not compulsory if it was the subject of another pending action at the time the action was commenced. Fed.R.Civ.P. 13; *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. at 469 n. 1, 94 S.Ct. at 2506 n. 1.

> The purpose of this exception is seemingly to prevent one party from compelling another to try his cause of action in a court not of the latter's choosing when the same cause of action is already the subject of pending litigation in another forum, one which was probably chosen by the owner of the cause of action concerned.

*Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir.1960). However, that is not the case here. CSB's collection and foreclosure action was not pending in any state or federal court prior to the commencement of Phillips' RICO, Bank Tying Act and usury actions. *After* Phillips commenced his causes of action in federal court, CSB unilaterally selected its own forum; it brought the collection and foreclosure action in state court when it should have asserted those claims as a counterclaim in the pending federal suit.

Because the CSB's collection and foreclosure action was an unasserted compulsory counterclaim to Phillips' RICO, Bank Tying Act and usury claims, once those actions proceeded to judgment, principles of *res judicata* would bar CSB's subsequent pursuit of its claims in any other forum.[19] The next question here, then, is whether the FDIC, as receiver and/or liquidator for CSB, is likewise barred by the compulsory counterclaim rule from further pursuit of the collection and foreclosure action now pending in the federal district court.

**19.** Instead of requesting this court to declare the FDIC's claims void and unenforceable, however, the more appropriate procedure might be for

## V. Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA)

The FDIC argues that, even if CSB waived its rights to nonjudicial foreclosure, making the claims in question compulsory counterclaims, that waiver is not binding on the FDIC under the *D'Oench, Duhme* doctrine, as well as Section 1823(e) of Title 12. *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); 12 U.S.C. § 1823(e). The FDIC spends a considerable portion of its brief addressing the *D'Oench, Duhme* doctrine which prevents a borrower from showing that a transaction is somehow different in form or substance from that reflected in the records of the failed financial institution. *See generally Bell & Murphy & Assoc., Inc. v. InterFirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Federal Sav. & Loan Ins. Corp. v. Locke*, 718 F.Supp. 573, 583 (W.D.Tex.1989). The *D'Oench, Duhme* doctrine prevents a borrower from asserting as a defense to collection reliance on representations and promises made, or conduct engaged in, by a lender outside of the transaction. *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 91–95, 108 S.Ct. 396, 401–403, 98 L.Ed.2d 340 (1987); *Federal Sav. & Loan Ins. Corp. v. Locke*, 718 F.Supp. at 582.

The codified version of that doctrine is 12 U.S.C. § 1823(e), which provides that any agreement which tends to diminish or defeat the right, title, or interest of the FDIC must meet certain stringent criteria:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement
>
> 1) is in writing,

Phillips to file his own Rule 12(b)(6) motion in the removed federal action, premised on Rule 13(a).

2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

The FDIC claims that Phillips cannot show that these stringent criteria have been met because any alleged waiver of CSB's right to extra-judicial foreclosure would only constitute a "side agreement" not made in writing and not made a part of the bank's records. Therefore, goes the argument, any such waiver by CSB cannot be binding on the FDIC. The argument fails to take into account the impact of Congress' most recent pronouncements in this area.

In 1989, Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA). Section 212(a), § 11(d)(13)(A) of that Act provides:

(d)(13) ADDITIONAL RIGHTS AND DUTIES

(A) PRIOR FINAL ADJUDICATION—The Corporation shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Corporation as conservator or receiver.

Pub.L. No. 101–73, 103 Stat. 183, 232 (1989). Section 212(a), § 11(d)(13)(D) of the Act provides:

(D) LIMITATION ON JUDICIAL REVIEW—Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed

receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

*Id.*

Section 212(a), § 11(d)(13)(A) operates as an exception to Section 212(a), § 11(d)(13)(D). Thus, if an act or omission of a depository institution or the Corporation has been incorporated into a final judgment, it is binding on the FDIC.

Although the FDIC's recitation of the law which has developed from *D'Oench, Duhme* is essentially correct, it is not applicable in this instance because the alleged waiver was not a simple "outside" agreement, but rather formed the basis for the district court's order extending discovery deadlines, an order which in turn became final when the case was ultimately disposed of. The FDIC's argument might be correct prior to the district court's judgment becoming final and unappealable. However, the waiver of right to nonjudicial foreclosure was itself merged into the district court's final judgment, which is now binding on the FDIC. FIRREA, Section 212(a), § 11(d)(13)(A). The FDIC's claims for collection and judicial foreclosure, compulsory counterclaims under Rule 13(a) for the reasons discussed above, are now barred under principles of *res judicata* by that prior final judgment.

## VI. FDIC as Holder in Due Course

 Finally, the FDIC argues that if the claims in question are compulsory counterclaims which CSB waived, such waiver is still not binding on the FDIC because, under *D'Oench, Duhme*, the FDIC in its corporate capacity and as receiver has available to it special defenses (sometimes referred to as "special powers") and is deemed to be a holder in due course of the instruments and obligations upon which the claims are based. *See D'Oench, Duhme & Co.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *see also Bell & Murphy & Assoc. Inc.*, 894 F.2d at 754; *Campbell Leasing, Inc. v. Federal Deposit Ins. Co.*, 901 F.2d

1244, 1248–49 (5th Cir.1990). Again the FDIC spends a considerable portion of its brief discussing how the FDIC is treated as a holder in due course, how a holder in due course is protected from personal defenses but not real defenses, how Phillips' defenses (such as waiver) against CSB are personal and how those personal defenses now cannot be asserted against the FDIC. *See generally, Bell & Murphy & Assoc. Inc.,* 894 F.2d 750; *Campbell Leasing, Inc.,* 901 F.2d 1244; *Federal Sav. & Loan Ins. Corp. v. Murray,* 853 F.2d 1251 (5th Cir. 1988); *see also NCNB Texas Nat'l Bank v. Campise,* 788 S.W.2d 115 (Tex.App.— Houston [14th Dist.] 1990, writ requested).

The FDIC argues that Phillips' defense of waiver is not a real defense, but is a personal defense that precludes only the original holder from collecting on the obligations, not the FDIC. Essentially, the FDIC's argument is that without Phillips being able to assert CSB's waiver, the rule in *Thurman* applies, so that the claims of CSB (now the FDIC) are not compulsory counterclaims, the pending collection and foreclosure action is not barred, and therefore Phillips' complaint fails to state a claim upon which relief could be granted.

The problem with this argument is that it is premised on the contention that the alleged waiver is void and nonexistent. This is not the holding of the cases upon which the FDIC relies. The theory under *D'Oench, Duhme* is that waivers which would otherwise be binding on the party who made the waiver cannot *be asserted* against a holder in due course, not that the waiver is nonexistent. It is incorrect to maintain that the FDIC's mere presence in the case makes the waiver vanish.

Wright, Miller & Kane state:

The effect of Rule 13(a) is to broaden the scope of the cause of action that was deemed to have been determined when a final judgment is rendered. As a result, a successful defendant is precluded from subsequently suing on a claim that should have been interposed as a counterclaim in the first action; in other words the omitted counterclaim is merged into the judgment in that suit.

C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1417 (1990). When CSB waived its right to non-judicial foreclosure prior to the FDIC's involvement in this case, that waiver made the suit for collection and foreclosure a compulsory counterclaim to Phillips' RICO, Bank Tying Act and usury claims, for the reasons discussed earlier in this decision. The omitted compulsory counterclaims in the federal district court merged into the final judgment on the merits of Phillips' claims. It is not the alleged waiver itself but the final judgment into which that waiver merged which binds the FDIC to the consequences of CSB's actions, regardless of any protections that the FDIC might otherwise have as a holder in due course. *See FIRREA,* Pub.L. No. 101–73, 103 Stat. 183, 232 (1989). The court need not (and does not) reach the question whether such a waiver made in pleadings could be raised by Phillips in support of his barred compulsory counterclaim argument absent this merger.

## CONCLUSION

The court may dismiss a complaint for failure to state a claim only when allegations of the complaint itself demonstrate that the plaintiff does not have a claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Dubray v. Rosebud Housing Auth.,* 565 F.Supp. 462, 465 (D.S.C.1983). Be it by distinguishing the application of *Thurman,* by judicial estoppel, by the effect of FIRREA or by the inapplicability of the election of remedies and the holder in due course doctrines, the complaint withstands the FDIC's arguments that the plaintiff does not have a claim. Phillips has therefore stated a claim upon which relief could be granted. The FDIC's motion to dismiss for failure to state a claim upon which relief can be granted is accordingly DENIED.

So ORDERED.