NATIONAL LOAN INVESTORS,
L.P., Appellant,

v.

Jerry TAYLOR and Janice
Taylor, Appellees.

No. 10–01–179–CV.

Court of Appeals of Texas,
Waco.

May 29, 2002.

Rehearing Overruled June 26, 2002.

Thomas S. Harmon, Elms Harmon, L.L.C., San Antonio, Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Austin, for appellant.

Stephen R. Fontaine, Law Office of Stephen R. Fontaine, P.C., Waco, for appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Jerry and Janice Taylor bought a modular home in 1986 and permanently attached it to 5.36 acres of land they had owned for five years. The cost of the home and its installation was $56,000. Electrical and plumbing utilities were immediately installed, and the Taylors moved into the home. The seller continued to "finish out" the home while the Taylors lived in it. Fourteen months after move-in, Mr. Taylor "made an agreement with [the seller] to—if they would furnish the materials, paint, and a certain amount of lumber that was needed to finish what they had agreed to finish, that [the Taylors] would go ahead and make a loan on the house." The seller arranged for United Bank of Waco to be the lender, and the Taylors borrowed $56,000 which was paid by the bank to the seller. On April 23,

1987, the Taylors signed a note for $56,000, as well as a deed of trust in which they pledged, as security for the note, both the modular home and the 5.36 acres.

The next year the Taylors, who by then were in default on the note, filed a chapter seven bankruptcy proceeding. Through the bankruptcy they discharged $42,000 in unsecured debt. They listed United Bank as the only secured creditor. The bankruptcy court ordered the bankruptcy's automatic stay lifted as to the bank, and the Taylors resumed their monthly payments.

In 1990, United Bank went into receivership, and there was a succession of owners of the note. In 1991, the Taylors defaulted on the promissory note, and in 1998, the then owner of the note filed this suit seeking damages and a declaratory judgment to establish its right to foreclosure on the property and for attorney's fees. Later, Appellant (N.L.I.) became the owner of the note. There was a bench trial in 2001. The Taylors argued that the property is their homestead and that the manner in which the security interest (lien) was established did not meet the statutory requirements for perfecting a lien on a homestead. The trial court denied N.L.I. relief, and it appeals.

The facts are not in dispute. We will review the legal issues *de novo*.

### Was the proof sufficient that the property was the Taylor's homestead?

N.L.I. argues that the evidence is legally insufficient that the property was the Taylor's homestead.[1] When we conduct a review of whether the evidence is legally

---

1. N.L.I. makes a distinction between an urban and a rural homestead. In 1987, an urban homestead could be no larger than one acre while a rural homestead could be up to 200 acres. TEX. PROP.CODE ANN. § 41.002 (Vernon 1985) (amended effective January 1, 2000, to increase urban homestead to ten

acres). N.L.I. says the Taylors adduced no evidence of the elements of a rural homestead. However, N.L.I.'s lawsuit was to foreclose on the entire acreage. Therefore, even if the Taylor's proof was only as to an urban homestead, N.L.I.'s claim may be defeated.

sufficient, we consider only that evidence and the inferences therefrom which support the finding, considered in the light most favorable to the finding, and disregard contrary evidence and inferences. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). We can find the evidence legally insufficient if: (1) there is a complete absence of evidence for the finding, (2) there is evidence to support the finding, but rules of law or evidence bar the court from giving any weight to the evidence, (3) there is no more than a mere scintilla of evidence to support the finding, or (4) the evidence conclusively establishes the opposite of the finding. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–63 (1960)). "More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Burroughs Wellcome*, 907 S.W.2d at 499 (quoting *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994)). If the evidence is so weak as to do no more than create a mere surmise or suspicion of the findings existence, the effect is that there is legally-insufficient evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex.1995).

 Homestead rights are established by a combination of (a) overt acts showing homestead usage and (b) the intent of the land owner to claim the property as homestead. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Sims v. Beeson*, 545 S.W.2d 262, 263 (Tex.Civ.App.-Tyler 1977, no writ); *Prince v. North State Bank*, 484 S.W.2d

405, 409 (Tex.Civ.App.-Amarillo 1972, writ ref'd n.r.e.). "Possession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact." *NCNB Texas Nat. Bank v. Carpenter*, 849 S.W.2d 875, 880 (Tex.App.-Fort Worth 1993, no writ); *Garrard v. Henderson*, 209 S.W.2d 225, 230 (Tex.Civ. App.-Dallas 1948, no writ).

 Mr. Taylor testified at the hearing that he and his wife had been living in the modular home—their only home—for fourteen months before signing the note and deed of trust. Also, the deed of trust, introduced into evidence at the bench trial, states that the property is not a homestead "[u]nless actually being occupied by [the Taylors] as a homestead." Conversely, by implication, occupying the property as a homestead evidences that it is. Finally, two documents from the bankruptcy proceeding introduced into evidence at trial by N.L.I. list the property as a homestead. Combining all this evidence, we find more than a scintilla of evidence that the property was the Taylors' homestead.

This complaint is overruled.

### Are the Taylors judicially estopped from asserting the lien was not valid?

N.L.I. argues that the $56,000 was "purchase money" for the modular home, because it was used to pay the original seller of the home. Therefore, homestead status does not exempt the property from foreclosure. Its authority is article sixteen, section fifty of the Texas Constitution, and section 41.001(b)(1) of the Property Code. Tex. Const. art. XVI, § 50(a)(1) (Vernon Supp.2002); Tex. Prop.Code Ann. § 41.001(b)(1) (Vernon Supp.2002).

The Taylors rely on § 50(a)(5) of the Constitution, and also refer to section 53.254 of the Property Code. Tex. Const. art. XVI, § 50(a)(5) (Vernon Supp.2002); *see also* Tex. Prop.Code Ann. § 41.001(b)(3)

(Vernon Supp.2002) (a lien can be created on a homestead pursuant to section 53.254). Section 50(a)(5) excludes from the homestead exemption "work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon ...." TEX. CONST. art. XVI, § 50(a)(5). Section 53.254 of the Property Code applies to residential construction projects and is a companion to the constitutional provision. A person furnishing labor or material for a project cannot claim a lien on the property unless he complies with various statutory requirements, including execution of a written contract prior to furnishing the labor or material. TEX. PROP.CODE ANN. §§ 53.001(1) (definition of "residential construction project"), 53.251, 53.254 (Vernon Supp.2002).[2] The Taylors say that because the statutory requirements were not met—which is not disputed by the parties—a lien was not created.

We need not resolve this dispute, however, because we find that the Taylors are estopped from arguing against the validity of whatever lien may exist.

■ Judicial estoppel protects the integrity of judicial proceedings by precluding a party from asserting a position in a legal proceeding which is inconsistent with a position previously taken by the party. *Andrews v. Diamond, Rash, Leslie & Smith,* 959 S.W.2d 646, 649 (Tex.App.-El Paso 1997, pet. denied) (citing *Brandon v. Interfirst Corp.,* 858 F.2d 266, 268 (5th Cir.1988), and *In re Phillips,* 124 B.R. 712, 720 (Bkrtcy.W.D.Tex.1991)). It prevents a party from "playing fast and loose" with the courts to suit its own purposes. *Id.*

Our Supreme Court has explained when judicial estoppel applies. In *Long v. Knox,* a judgment creditor attempted to execute on mineral interests allegedly owned by Knox, who filed a suit for injunctive relief. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 294 (1956). As part of his pleadings, Knox and his wife swore that the mineral interests were the separate property of Mrs. Knox. *Id.* The suit was dismissed for want of prosecution after the judgment creditor abandoned efforts to execute. *Id.* Later Knox died, and his daughter as administratrix filed a suit in which she asserted that the mineral interests were community property. *Id.* at 293. The Supreme Court held that the administratrix was barred by judicial estoppel from claiming as community property that which Knox formerly swore was Mrs. Knox's separate property. The Court explained its reasoning:

> [J]udicial estoppel is not strictly speaking estoppel at all but arises from positive rules of procedure based on justice and sound public policy. It is to be distinguished from equitable estoppel based on inconsistency in judicial proceedings because the elements of reliance and injury essential to equitable estoppel need not be present .... "[A] party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath the contrary to the assertion sought to be made." 31 C.J.S., Estoppel, s 121, p. 390 .... [Here] [t]he creditor was thus convinced and abandoned further efforts. Knox gained the advantage of preventing the property from being sold. Having thus sworn under oath in this judicial proceeding that his wife owned the property in her separate right he

---

**2.** Section 53.254 went into effect in 1997. Its predecessor was section 53.059. The parties

do not disagree about which statute applies.

would not be heard now to maintain a contrary position in the absence of proof that the averment was made inadvertently or by mistake or by fraud or duress.

*Id.* at 295. Significantly, the Court cited and distinguished two cases ·in which a party was not estopped, even though there was an inconsistent sworn inventory and appraisement filed in a prior suit, because the party gained no advantage by the prior filing. *Id.* at 296.

 The prior statement which works the estoppel may be oral or written. *Miller v. Gann,* 842 S.W.2d 641, 641 (Tex. 1992). In either instance, it must be "deliberate, clear, and unequivocal." *Am. Sav. & Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581, 589 (Tex.1975); *Owen v. Knop,* 853 S.W.2d 638, 641 (Tex.App.-Corpus Christi 1993, writ denied). And the statement must be sworn. *Miller,* 842 S.W.2d at 641; *Knop,* 853 S.W.2d at 641; *Miles v. Plumbing Services of Houston,* 668 S.W.2d 509, 512 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.).

We agree with other courts of appeals that the elements of judicial estoppel are: (1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) the party making the statement gained some advantage by it; (3) the statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal. *E.g., Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 25 S.W.3d 863, 871 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *In re Estate of Huff,* 15 S.W.3d 301, 309 (Tex.App.-Texarkana 2000, no pet.); *In re M.M.O.,* 981 S.W.2d 72, 84 (Tex. App.-San Antonio 1998, no pet.); *Knop,* 853 S.W.2d at 641.

The secured-creditors schedule that the Taylors filed in the bankruptcy proceeding meets these elements because it:

- was filed in a prior judicial proceeding;
- was inconsistent with their current position;
- was made under oath;
- worked an advantage to the Taylors, because it lulled United Bank into not taking action within the bankruptcy, when the facts were fresh and the original lender was a party, to determine whether it had a lien;
- was not made inadvertently or because of mistake, fraud, or duress; and
- was deliberate, clear, and unequivocal.

Therefore, the Taylors are estopped to assert that N.L.I. does not have a lien on their property.[3]

We reverse the judgment and remand this cause for further proceedings.

---

3. Because of this disposition, we do not address N.L.I.'s other issues.