Ronald D. SMITH D/B/A Ouida
Oil, et al., Appellants,

v.

L.D. BURNS DRILLING COMPANY,
et al., Appellees.

No. 10–92–245–CV.

Court of Appeals of Texas,
Waco.

March 31, 1993.
Rehearing Denied April 28, 1993.

Marcus A. Carroll, Ireland, Carroll & Kelley, P.C., Tyler, for appellants.

A.W. Arnold, III, Scott W. MacLaren and Benton J. Barton, Gwinn & Roby, Dallas, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Ronald Smith, doing business as Ouida Oil, and twenty-five investors under a joint operating agreement filed suit against L.D. Burns Drilling Company and L.D. Burns Drilling Company, Inc. Smith and the investors sought damages arising out of a gas well re-entry and sidetrack drilling program being conducted by Burns under a daywork drilling contract. In their first cause of action, Smith and the investors alleged that Travis Little, a Burns employee, dropped the production casing down the hole and that his actions constituted negligence, gross negligence, a breach of contract, and a breach of express and implied warranties. In their second cause of action, Smith and the investors alleged that the rig and equipment provided by Burns was in poor condition, causing significant cost overruns and delays that constituted a breach of contract and a breach of express and implied warranties. Burns filed a cross-claim against Smith and the investors

for failure to pay for services rendered under the daywork contract.

Burns moved for summary judgment on the ground that Smith's claims were barred by the daywork contract, including a provision releasing liability for consequential damages. In response, Smith argued that all damages sought were direct, rather than consequential, because they naturally flowed from Little's acts. Smith also took issue with Burns' interpretation of the release and indemnity provisions of the daywork contract. Furthermore, the investors argued that, because they were not parties to the daywork contract, their rights were not affected by the release and indemnity provisions. The investors also moved for summary judgment on the ground that, because they were neither parties to the daywork contract nor joint venturers with Smith, they were not personally liable to Burns for services rendered under the daywork contract. The court granted both motions for summary judgment but severed out Burns' breach of contract claim against Smith along with Smith's claim of offset on his breach of contract claim against Burns.[1] We construe the trial court's final judgment as severing out Smith's second cause of action and Burns' cross-claim, leaving only Smith and the investors' first cause of action and the investors' right to pursue the second cause of action as the subject of this appeal.

Before addressing Smith and the investors' first point, we will discuss their second point and Burns' cross-point because they both deal with the investors' relationship to Smith and their potential rights and liabilities in this litigation. In point two Smith and the investors argue that Burns' motion for summary judgment was improperly granted against the investors because they were not bound by the daywork contract. By granting the investors' motion for summary judgment on Burns' cross-claim, the court concluded that the investors were neither parties to the daywork contract nor joint venturers with Smith. In a single cross-point Burns contends that the investors' motion for summary judgment was improperly granted because they were joint venturers as a matter of law.

■ A joint venture must include these four elements: a community of interest in the venture; an agreement to share profits; an agreement to share losses; and a mutual right of control or management of the enterprise.[2] The investors, by their Joint Operating Agreement, granted Ouida Oil "direct control of all operations." Under the Subscription Agreement each investor agreed to pay $14,200 for a three-percent working interest in the well. Furthermore, in the Private Placement Memorandum, Smith agreed that, "if the costs of drilling and completing the test well exceeds $355,-000.00 [$14,200 × 25 investors], Smith will bear all such excess costs." Finally, the Joint Operating Agreement expressly provided, "It is not the intention of the parties to create, nor shall this agreement be construed as creating, a mining or other partnership or association, or to render the parties liable as partners."

■ Burns has not asserted in its motion for summary judgment, or in its response to the investors' motion for summary judgment, that the investors became liable by actually exercising joint participation, control, or operation of the well.[3] We conclude that the unambiguous contracts and the proof show no more than that the nonoperators were investors, who had and exercised no right to participate in the control or operation of the venture.[4] Because the investors were not joint venturers as a matter of law, the trial court properly granted their motion for summary judgment on Burns' breach of contract claim

---

1. We note that Burns also filed a motion for summary judgment on the ground that, as a matter of law, the investors were joint venturers with Smith. Because no appeal has been taken from the denial of that motion for summary judgment, however, it will not be discussed further.

2. *Ayco Development Corp. v. G.E.T. Service Co.,* 616 S.W.2d 184, 186 (Tex.1981).

3. *See id.*

4. *See id.*

against them. Accordingly, we overrule Burns' cross-point.

■ For the same reason—the investors' lack of privity with Burns—Smith and the investors' second point of error should be overruled. Burns owed no duty, whether contractual or in tort, to the investors. Furthermore, under the Private Placement Memorandum, the investors agreed to rely upon Smith, as the operator under the Joint Operating Agreement, to manage and control all activities related to oil and gas development and production. The parties specifically agreed that Smith would obtain drilling and completion services from a driller or well-completion contractor. Furthermore, Smith was given the absolute discretion to plug and abandon a well that he determined was not capable of production. Although the investors bore the risk of loss of their entire investment, Smith expressly assumed the risks of all costs overruns. Because the investors' rights as working-interest owners were made completely derivative of Smith's rights and obligations as the operator, the investors cannot individually pursue claims arising out of Smith's relationship with Burns. Therefore, we overrule point of error two.

■ In point one Smith and the investors contend that the court erred in granting Burns' motion for summary judgment. They argue that the summary judgment was improperly granted because (1) at the time Little caused the damage to the well, Burns was not operating on a "day work basis"; (2) a question of fact existed regarding whether Smith had "fair notice" of the indemnity provisions; and (3) the damages sought were direct rather than consequential. Of the three issues raised by point one, however, only the third was expressly presented to the trial court in Smith and the investors' response to Burns' motion for summary judgment. Issues not expressly presented to the trial court by written response shall not be considered on appeal as grounds for reversal of a summary judgment.[5] Therefore, under point one, we will only consider whether the summary judgment was improperly granted be-

cause the damages sought were direct rather than consequential.

The daywork drilling contract, between Ouida Oil as Operator and L.D. Burns Drilling Company as Contractor, contained the following relevant provisions:

Except for such obligations and liabilities specifically assumed by Contractor, *Operator shall be solely responsible and assumes liability for all consequences of operations* by both parties while on a daywork basis, including results and all other risks or liabilities incurred in or incident to such operations.

. . . .

**14.5 The Hole:** In the event the hole should be lost or damaged, *Operator shall be solely responsible for* such damage to or *loss of the hole, including the casing therein.*

. . . .

**14.12 Consequential Damages:** *Neither party shall be liable to the other for special, indirect or consequential damages* resulting from or arising out of this Contract, including, without limitation, loss of profit or business interruptions, however same may be caused.

**14.13 Indemnity Obligation:** Except as otherwise expressly limited herein, it is the intent of the parties hereto that all indemnity obligations and/or liabilities assumed by such parties under terms of this Contract, including, without limitation, paragraphs 14.1 through 14.12 hereof, be without limit and without regard to the cause or causes thereof (including pre-existing conditions), the unseaworthiness of any vessel or vessels, strict liability, or *the negligence of any party or parties,* whether such negligence be sole, joint or concurrent, active or passive. . . .

(Emphasis added).

Burns replies that Smith's release of liability for consequential damages was not the only relevant provision of the daywork contract. When a trial court's order granting summary judgment does not specify the grounds relied on for its ruling, the summary judgment will be affirmed on ap-

---

5. Tex.R.Civ.P. 166a(c).

peal if any of the theories advanced are meritorious.[6] In addition to asserting that Smith assumed liability for all consequential damages, Burns' motion for summary judgment relied upon section 14.5, pointing out that Smith "had *sole* responsibility for loss or damage to the hole." Because the summary judgment can be affirmed on the basis that Smith assumed liability for all damage to or loss of the hole, we need not determine whether the damages sought were direct rather than consequential. Furthermore, because Smith and the investors did not attack the enforceability of section 14.5 in their response to Burns' motion for summary judgment, we need not address the issues of fair notice, the express-negligence test, or section 127.003 of the Civil Practices and Remedies Code.[7] We overrule point of error one.

We affirm the judgment.

---

**6.** *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

**7.** *See Dresser Indus. Inc. v. Page Petroleum, Inc.,* 821 S.W.2d 359, 364–65 (Tex.App.—Waco 1991, writ granted); Tex.R.Civ.P. 166a(c).