Dallas Sales Company, Inc. v. Carlisle Silver Company, et al















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-077-CV

     DALLAS SALES COMPANY, INC.,
                                                                         Appellant
     v.

     CARLISLE SILVER COMPANY, INC.,
     D/B/A CARLISLE JEWELRY COMPANY,
     H. WILLIAM POLLACK, III,
     CAROLYN POLLACK AND 
     J.C. PENNEY COMPANY, INC.,
                                                                         Appellees
 

From the 160th District Court
Dallas County, Texas
Trial Court # DV98-05938-H
                                                                                                                
                                                                                                     
O P I N I O N
                                                                                                                

      Dallas Sales Company, Inc. (“Dallas Sales Co.”) filed suit against Appellees Carlisle Silver
Company, Inc. dba Carlisle Jewelry Company (“Carlisle”), H. William Pollack, III and his wife
Carolyn, and J. C. Penney Company, Inc. (“Penney”) alleging breach of contract and other
theories of recovery arising from various transactions among the parties. The trial court granted
Appellees’ motion for summary judgment.
      Dallas Sales Co. claims in five points that the trial court erred in granting summary judgment
because: (1) judicial estoppel does not bar its claims; (2) its tort claims do not sound solely in
contract; (3) Appellees failed to establish as a matter of law that the parties did not have a joint
venture agreement; (4) genuine issues of material fact exist on the question of whether Appellees
engaged in a conspiracy; and (5) Appellees’ summary judgment motion did not seek judgment on
its claim against Penney “for goods sold and delivered” as alleged in an amended pleading.
BACKGROUND
      Carlisle is a jewelry manufacturer owned and operated by William and Carolyn Pollack. 
Dallas Sales Co. is a wholesale dealer of watches and clocks and had been a supplier for Penney
since the early 1990’s. The relationship between Dallas Sales Co. and Penney at all pertinent
times was governed by a July 1996 listing agreement.
      Dallas Sales Co. and Carlisle executed a sales representation contract in August 1995. The
contract required Carlisle to pay Dallas Sales Co. a twelve percent commission on all orders from
Penney. The contract could be terminated by either party by giving 180 days notice by certified
mail.
      In November 1995, the Pollacks mailed a letter to Dallas Sales Co. owner John Ferguson on
Carlisle stationery proposing an agreement for Dallas Sales Co. to market a new line of jewelry
manufactured by Carlisle called the “Loving Family.” Under the terms of the proposal, Carlisle
would manufacture the new product line and handle most aspects of accounting and distribution. 
Dallas Sales Co. would provide the distribution network and product support. The Pollacks met
with Ferguson later that month to discuss the proposal. The parties dispute whether they finalized
an agreement at that meeting.
      Ferguson sent a letter to the Pollacks in January 1996 informing them that Dallas Sales Co.
was giving the required 180 days’ notice of its intent to terminate the August 1995 contract.
      Dallas Sales Co. filed for reorganization under Chapter 11 of the Bankruptcy Code in
September 1996. When Dallas Sales Co. filed its schedule of assets and liabilities in the
bankruptcy court, it did not list any claims involving Carlisle. Dallas Sales Co. filed an adversary
proceeding against Carlisle in the bankruptcy court in April 1997, asserting claims similar to those
alleged in the present suit. However, Dallas Sales Co. did not amend its schedules to include these
claims. The bankruptcy court converted the proceedings from a Chapter 11 reorganization to a
Chapter 7 liquidation in December 1997. The court dismissed and closed the adversary
proceeding in October 1998 and dismissed and closed the bankruptcy case in February 1999.
      Dallas Sales Co. filed the present suit in July 1998 alleging causes of action against Carlisle
for: (1) breach of the August 1995 contract; (2) breach of an alleged joint venture agreement (for
distribution of the Loving Family line); (3) fraud; (4) constructive fraud; (5) breach of fiduciary
duty; (6) equitable estoppel; (7) unjust enrichment; (8) civil conspiracy; and (9) an accounting for
the joint venture. Dallas Sales Co. asserted causes of action against Penney for: (1) civil
conspiracy; (2) breach of contract; and (3) fraud.
      Carlisle, Penney, and the Pollacks (collectively, “Appellees”) filed a joint summary judgment
motion in October 1999. They alleged as grounds for summary judgment that: (1) Dallas Sales
Co. is judicially estopped from asserting its claims against them because it failed to include the
claims in its bankruptcy schedules; (2) Dallas Sales Co.’s tort claims sound only in contract; (3)
Carlisle and Dallas Sales Co. did not enter a joint venture agreement to market and distribute the
Loving Family line; (4) the Pollacks are not individually liable under any alleged joint venture
agreement; (5) the January 1996 letter from Ferguson to the Pollacks terminated any alleged joint
venture; (6) Dallas Sales Co.’s bankruptcy filing terminated any alleged joint venture; (7) Dallas
Sales Co. can produce no evidence of a conspiracy between Appellees; (8) Dallas Sales Co.’s
claim against Penney for improper chargebacks


 fails to state an actionable claim; and (9) Dallas
Sales Co. has waived its claim against Penney because Dallas Sales Co. failed to give Penney
written notice of the disputed chargebacks within 60 days as required by the listing agreement.
      The trial court granted summary judgment in favor of Appellees without specifying the
grounds for its ruling.
STANDARD OF REVIEW
      To prevail on a summary judgment motion, the movant must demonstrate that there are no
genuine issues of material fact and that it is entitled to judgment as a matter of law. Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Nixon v. Mr. Prop. Mgt. Co., 690 S.W.2d
546, 548 (Tex. 1985); Fletcher v. Edwards, 26 S.W.3d 66, 73 (Tex. App.—Waco 2000, pet.
denied). We take all evidence favoring the nonmovant as true. Sw. Elec. Power Co., 73 S.W.3d
at 215; Fletcher, 26 S.W.3d at 73. We indulge every reasonable inference from the evidence in
favor of the nonmovant and resolve any doubts in its favor. Id.
      A trial court cannot grant summary judgment on a ground not expressly presented in the
summary judgment motion. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex.
1996); Fletcher, 26 S.W.3d at 74. Similarly, “[t]he non-movant must expressly present to the trial
court, by written answer or response, any issues defeating the movant’s entitlement [to summary
judgment].” McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 343 (Tex. 1993) (citing
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979)); Fletcher, 26
S.W.3d at 74.
      “When the trial court does not specify the basis for its summary judgment, the appealing party
must show it is error to base it on any ground asserted in the motion.” Star-Telegram, Inc. v.
Doe, 915 S.W.2d 471, 473 (Tex. 1995); Fletcher, 26 S.W.3d at 74. We consider only those
grounds “the movant actually presented to the trial court” in the motion. Cincinnati Life Ins., 927
S.W.2d at 625; Fletcher, 26 S.W.3d at 74. We do not consider grounds the non-movant failed
to expressly present to the trial court in a written response. See Tex. R. Civ. P. 166a(c);
McConnell, 858 S.W.2d at 343; Fletcher, 26 S.W.3d at 74.
OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE
      Appellees asserted numerous (approximately 60) objections to the summary judgment
evidence proffered by Dallas Sales Co. At the close of their brief, they contend that the trial court
implicitly sustained these objections because it granted their summary judgment motion and stated
in the judgment that it considered “the summary judgment evidence admitted for consideration.” 
They state in a conclusory fashion that we should consider none of the evidence to which they
objected in view of the trial court’s “ruling.”
      This Court has recently concluded that the grant of a summary judgment motion “does not
necessarily provide an implicit ruling that either sustains or overrules objections to the summary
judgment evidence.” Allen ex rel. B.A. v. Albin, 97 S.W.3d 655, 663 (Tex. App.—Waco 2002,
no pet.) (citing Well Solutions, Inc. v. Stafford, 32 S.W.3d 313, 317 (Tex. App.—San Antonio
2000, no pet.)); accord In re Est. of Loveless, 64 S.W.3d 564, 573 (Tex. App.—Texarkana 2001,
no pet.); Jones v. Ray Ins. Agency, 59 S.W.3d 739, 752-53 (Tex. App.—Corpus Christi 2001),
pet. denied per curiam, 92 S.W.3d 530 (Tex. 2002); Dolcefino v. Randolph, 19 S.W.3d 906, 926
(Tex. App.—Houston [14th Dist.] 2000, pet. denied); contra Frazier v. Khai Loong Yu, 987
S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied) (order granting summary judgment
and expressly stating court reviewed “all competent summary judgment evidence” implicitly
sustained movant’s objections to non-movant’s evidence); but see Wrenn v. G.A.T.X. Logistics,
Inc., 73 S.W.3d 489, 498 (Tex. App.—Fort Worth 2002, no pet.) (ruling on objections cannot be
implied by mere grant of summary judgment without more).
      Because of the shear number of objections raised by Appellees, we cannot imply that the trial
court sustained all or part


 of Appellees’ objections from the court’s statement that it considered
“the summary judgment evidence admitted.” See Allen, 97 S.W.3d at 663; Wrenn, 73 S.W.3d
at 498; Loveless, 64 S.W.3d at 573; Jones, 59 S.W.3d at 752-53; Well Solutions, 32 S.W.3d at
317; Dolcefino, 19 S.W.3d at 926.
      Defects of substance in summary judgment proof can be raised for the first time on appeal. 
Daley v. Albertson’s, Inc., 83 S.W.3d 222, 225 (Tex. App.—El Paso 2002, no pet.); Ahumada
v. Dow Chem. Co., 992 S.W.2d 555, 562 (Tex. App.—Houston [14th Dist.] 1999, pet. denied);
Peerenboom v. HSP Foods, Inc., 910 S.W.2d 156, 160 (Tex. App.—Waco 1995, no writ). 
However, Appellees do not challenge any of Dallas Sales Co.’s evidence on this basis. 
Accordingly, we consider the entirety of the summary judgment record.
JUDICIAL ESTOPPEL
      Dallas Sales Co. alleges in its first point that Appellees failed to conclusively establish that
it is judicially estopped from asserting its claims because (1) the claims were disclosed on
“numerous occasions” during the bankruptcy proceedings, (2) its failure to list the claims in the
schedules was inadvertent, and (3) it gained no advantage by failing to disclose the claims.
      “Judicial estoppel protects the integrity of judicial proceedings by precluding a party from
asserting a position in a legal proceeding which is inconsistent with a position previously taken by
the party.” Natl. Loan Investors, L.P. v. Taylor, 79 S.W.3d 633, 636 (Tex. App.—Waco 2002,
pet. denied). This common law doctrine “prevents a party from ‘playing fast and loose’ with the
courts to suit its own purposes.” Id. (quoting Andrews v. Diamond, Rash, Leslie & Smith, 959
S.W.2d 646, 649 (Tex. App.—El Paso 1997, writ denied)).



      A party asserting judicial estoppel must establish: (1) the opponent made a sworn, inconsistent
statement in a prior judicial proceeding; (2) the opponent gained some advantage by the prior
statement; (3) the statement was not made inadvertently or because of mistake, fraud or duress;
and (4) the statement was deliberate, clear and unequivocal. Natl. Loan Investors, 79 S.W.3d at
637; Gen. Agents Ins. Co. of Am., Inc. v. Home Ins. Co. of Ill., 21 S.W.3d 419, 427 (Tex.
App.—San Antonio 2000, no pet.); Andrews, 959 S.W.2d at 650 n. 2.
      Judicial estoppel is an affirmative defense. See Anadarko Petroleum Co. v. Thompson, 94
S.W.3d 550, 553 (Tex. 2002). Therefore, Appellees bore the burden to conclusively establish
each element of their affirmative defense. Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996);
Perry v. Greanias, 95 S.W.3d 683, 691 (Tex. App.—Houston [1st Dist.] 2002, pet. denied);
Sonnichsen v. Baylor U., 47 S.W.3d 122, 124 (Tex. App.—Waco 2001, no pet.). To defeat
Appellees’ summary judgment motion, Dallas Sales Co. had to produce summary judgment
evidence which raised a genuine issue of material fact as to at least one element of the affirmative
defense. Carter v. Charles, 853 S.W.2d 667, 672 (Tex. App.—Houston [14th Dist.] 1993, no
writ).
No Advantage Gained
      Dallas Sales Co. avers that Appellees have failed to conclusively establish their judicial
estoppel claim because Dallas Sales Co. realized no advantage by omitting its claims against
Appellees from the bankruptcy schedules. Rather, because the bankruptcy was dismissed, Dallas
Sales Co. contends that its creditors may still reach any recovery it obtains from Appellees.
      Appellees respond to this contention by asserting that “many of those claims may be time
barred leaving [Dallas Sales Co.] to profit at the expense of creditors. [Dallas Sales Co.] has not
offered any evidence that it has waived the statute of limitations or has reaffirmed any time-barred
obligations.” (emphasis added).
      Appellees’ assertion that the claims of Dallas Sales Co.’s creditors may be time-barred at this
juncture does not conclusively establish that they are. See Walker, 924 S.W.2d at 377; Perry, 95
S.W.3d at 691; Sonnichsen, 47 S.W.3d at 124. Appellees’ contention that Dallas Sales Co. has
failed to offer evidence in this regard misapprehends the burden of proof in a summary judgment
proceeding. See Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222-23 (Tex. 1997) (“The
nonmovant has no burden to respond to a summary judgment motion unless the movant
conclusively establishes its cause of action or defense.”).
      Accordingly, we conclude that Appellees failed to conclusively establish that Dallas Sales Co.
gained some advantage by failing to list its claims against Appellees in its bankruptcy schedules. 
Thus, we sustain Dallas Sales Co.’s first point.
TORT CLAIMS
      Dallas Sales Co. claims in its second point that Appellees failed to conclusively establish their
entitlement to judgment on its tort claims for fraud, constructive fraud, breach of fiduciary duty,
equitable estoppel, unjust enrichment, and conspiracy (Counts Three through Eight) because those
claims do not sound solely in contract.
      As a general proposition, a cause of action sounds in contract if the only injury alleged is “the
economic loss to the subject of a contract itself.” Formosa Plastics Corp. USA v. Presidio Engrs.
& Contractors, Inc., 960 S.W.2d 41, 45 (Tex. 1998) (quoting Jim Walter Homes, Inc. v. Reed,
711 S.W.2d 617, 618 (Tex. 1986)); accord Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494-95 (Tex. 1991); Cone v. Fagadau Energy Corp., 68 S.W.3d 147, 161 & n. 7 (Tex.
App.—Eastland 2001, pet. denied). The Supreme Court has recognized an exception to this
general rule for fraudulent inducement claims. See Formosa Plastics, 960 S.W.2d at 47; Foley
v. Parlier, 68 S.W.3d 870, 885-86 (Tex. App.—Fort Worth 2002, no pet.); Cone, 68 S.W.3d at
161 n. 7; Yzaguirre v. KCS Resources, Inc., 47 S.W.3d 532, 542 (Tex. App.—Dallas 2000), aff’d,
53 S.W.3d 368 (Tex. 2001); Facciolla v. Linbeck Constr. Corp., 968 S.W.2d 435, 448 (Tex.
App.—Texarkana 1998, no pet.).
      Dallas Sales Co.’s second amended response to Appellees’ first request for disclosure reflects
that it seeks the following damages in its suit: (1) damages for Carlisle’s and the Pollacks’ breach
of the August 1995 contract; (2) lost profits as a result of Carlisle’s and the Pollacks’ breach of
the alleged joint venture agreement; (3) damages for Penney’s breach of its listing agreement with
Dallas Sales Co.; and (4) lost profits as a result of Appellees’ alleged conspiracy. With two
exceptions, Dallas Sales Co.’s pleadings reflect that its tort claims are based on: (1) Carlisle’s and
the Pollacks’ alleged breach of duties imposed by the August 1995 contract; (2) Carlisle’s and the
Pollacks’ breach of the alleged joint venture agreement; and (3) Penney’s breach of its listing
agreement with Dallas Sales Co.
      Nevertheless, Dallas Sales Co.’s pleadings reveal that two of the challenged tort claims do not
arise solely from its contracts with Appellees. Cf. Natividad v. Alexsis, Inc., 875 S.W.2d 695,
699 (Tex. 1994) (when appellate court reviews summary judgment premised on pleading
deficiencies, court “tak[es] all allegations, facts, and inferences in the pleadings as true and
view[s] them in a light most favorable to the pleader”); accord Torres v. City of Waco, 51 S.W.3d
814, 819 (Tex. App.—Waco 2001, no pet.); Higbie Roth Constr. Co. v. Houston Shell &
Concrete, 1 S.W.3d 808, 811-12 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).
      Dallas Sales Co. characterizes its fraud claim (Count Three) as a bifurcated claim for
fraudulent misrepresentation and for fraud in the inducement. Viewed in a light most favorable
to Dallas Sales Co., its petition supports this characterization.


 Dallas Sales Co.’s petition reflects
that its conspiracy claim (Count Eight) is also a bifurcated claim which alleges (1) that Appellees
conspired to breach the August 1995 contract and the alleged joint venture agreement and (2) that
Penney conspired with Fine Arts Creations to interfere with an exclusive contract between Dallas
Sales Co. and Fine Arts Creations. We construe the latter allegation as a contention that Penney
conspired with Fine Arts Creations to tortiously interfere with the Fine Arts Creations contract.



      Accordingly, we conclude that Appellees conclusively established their entitlement to
judgment on Dallas Sales Co.’s tort claims for constructive fraud, breach of fiduciary duty,
equitable estoppel, and unjust enrichment (Counts Four through Seven) because those claims sound
solely in contract. See Formosa Plastics, 960 S.W.2d at 45; Sw. Bell Tel., 809 S.W.2d at 494-95;
Jim Walter Homes, 711 S.W.2d at 618; Cone, 68 S.W.3d at 161.
      We likewise conclude that Appellees conclusively established their entitlement to judgment
on Dallas Sales Co.’s fraud claim (Count Three) insofar as it alleges that Carlisle and the Pollacks
made fraudulent misrepresentations “regarding the amount of commission due” under the August
1995 contract and on Dallas Sales Co.’s conspiracy claim insofar as it alleges that Appellees
conspired to breach the August 1995 contract and the alleged joint venture agreement. Id.
      To the extent that Dallas Sales Co.’s fraud claim alleges that Carlisle and the Pollacks
fraudulently induced it to enter a joint venture, Appellees failed to conclusively establish their
entitlement to judgment because this type of claim falls within the exception to the general rule
which the Supreme Court recognized in Formosa Plastics. 960 S.W.2d at 47; accord Foley, 68
S.W.3d at 885-86; Cone, 68 S.W.3d at 161 n. 7; Yzaguirre, 47 S.W.3d at 542; Facciolla, 968
S.W.2d at 448.
      To the extent that Dallas Sales Co.’s conspiracy claim alleges that Penney engaged in a
conspiracy to tortiously interfere with Dallas Sales Co.’s exclusive contract with Fine Arts
Creations, Penney failed to conclusively establish its entitlement to judgment because the “basic
measure of actual damages for tortious interference with contract is the same as the measure of
damages for breach of the contract interfered with.” Am. Natl. Petroleum Co. v. Transcon.Gas
Pipe Line Corp., 798 S.W.2d 274, 278 (Tex. 1990); accord Anderson, Greenwood & Co. v.
Martin, 44 S.W.3d 200, 219 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).
      For the foregoing reasons, we sustain Dallas Sales Co.’s second point in part and overrule it
in part.
JOINT VENTURE
      Dallas Sales Co. argues in its third point that Carlisle and the Pollacks failed to conclusively
establish that the parties did not have a joint venture agreement because: (1) the November 1995
letter from Carlisle to Dallas Sales Co. constitutes a joint venture agreement as a matter of law;
(2) the Pollacks are parties to the agreement because they signed it; (3) Ferguson’s January 1996
letter to the Pollacks did not terminate the joint venture; and (4) Dallas Sales Co.’s bankruptcy did
not terminate the joint venture.
      Texas courts have historically required a plaintiff to prove the following “essential elements”
to establish the existence of a joint venture: “(1) a community of interest in the venture, (2) an
agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or
management of the enterprise.” Coastal Plains Dev. Corp. v. Micrea, Inc., 572 S.W.2d 285, 287
(Tex. 1978); accord Blackburn v. Columbia Med. Ctr., 58 S.W.3d 263, 273 (Tex. App.—Fort
Worth 2001, pet. denied); Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., 48
S.W.3d 865, 879 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); Smith v. L.D. Burns
Drilling Co., 852 S.W.2d 40, 41 (Tex. App.—Waco 1993, no writ).
      Texas courts have long held that a joint venture is an association in the nature of a
partnership. Brown v. Cole, 155 Tex. 624, 631, 291 S.W.2d 704, 709 (1956); Blackburn, 58
S.W.3d at 272-73; Carlyle Jt. Venture v. H.B. Zachry Co., 802 S.W.2d 814, 816 (Tex.
App.—San Antonio 1990, writ denied); Lawler v. Dallas Statler-Hilton Jt. Venture, 793 S.W.2d
27, 33 (Tex. App.—Dallas 1990, writ denied); Eglin v. Schober, 759 S.W.2d 950, 953 (Tex.
App.—Beaumont 1988, writ denied). Thus, courts on occasion have applied pertinent provisions
of the partnership statutes to joint ventures. E.g., Truly v. Austin, 744 S.W.2d 934, 937 (Tex.
1988) (Texas Uniform Partnership Act); Carlyle Jt. Venture, 802 S.W.2d at 816 (same); Lawler,
793 S.W.2d at 33-34 (same).
      Texas courts have consistently held that no joint venture exists absent one or more of the
“essential elements.” Courts have most frequently concluded that no joint venture was formed
because of the absence of an express agreement to share losses. E.g., Coastal Plains Dev., 572
S.W.2d at 288; Swinehart, 48 S.W.3d at 879; Gutierrez v. Yancey, 650 S.W.2d 169, 172 (Tex.
App.—San Antonio 1983, no writ). This line of cases has been criticized by commentators. E.g.,
19 Robert W. Hamilton & Nancy Saint-Paul, Texas Practice: Business Organizations
§ 61 (1973 & Supp. 2002); Barbara Bader Aldave, Corporations and Partnerships, 33 Sw. L.J.
239, 240-42 (1979).
      Following the lead of the Supreme Court and other courts which have applied partnership
statutes to joint ventures, we conclude that the Legislature has by statute overruled the common
law rule that a joint venture does not exist in the absence of an express agreement to share losses.
      The Texas Revised Partnership Act (hereinafter, the “Act”) applies to joint ventures.


 Tex.
Rev. Civ. Stat. Ann. art. 6132b-2.02(a) (Vernon Supp. 2003). The Act defines a partnership
as follows:
Except as provided by Subsections (b) and (c),


 an association of two or more
persons to carry on a business for profit as owners creates a partnership, whether the
persons intend to create a partnership and whether the association is called a
“partnership,” “joint venture,” or other name. A partnership may be created under:

                  (1) this Act;
 
                  (2) the Texas Uniform Partnership Act (Article 6132b, Vernon’s Texas
Civil Statutes) and its subsequent amendments;
 
                  (3) the Texas Revised Limited Partnership Act (Article 6132a—1, Vernon’s
Texas Civil Statutes) and its subsequent amendments; or
 
                  (4) a statute of another jurisdiction comparable to this Act or the Texas
Revised Limited Partnership Act (Article 6132a—1, Vernon’s Texas Civil
Statutes) and its subsequent amendments.

Id. (footnote added). 
      According to the Act, “An agreement to share losses by the owners of a business is not
necessary to create a partnership.” Id. art. 6132b-2.03(c) (Vernon Supp. 2003). Saint-Paul states,
“This [provision] hopefully will put an end to the erroneous view expressed in [the cases requiring
an express agreement to share losses].” 19 Hamilton & Saint-Paul, supra § 61 (Supp. 2002). 
We agree with this interpretation.



      According to the Act, the following are “factors indicating” that a partnership or joint venture
has been formed:
      (1) receipt or right to receive a share of profits of the business;

      (2) expression of an intent to be partners in the business;

      (3) participation or right to participate in control of the business;

      (4) sharing or agreeing to share:

            (A) losses of the business; or

            (B) liability for claims by third parties against the business; and

      (5) contributing or agreeing to contribute money or property to the business.

Tex. Rev. Civ. Stat. Ann. art. 6132b-2.03(a) (Vernon Supp. 2003).
Formation
      Carlisle and the Pollacks contend that no joint venture exists because the November 1995
letter does not: (1) express an intent that they and Dallas Sales Co. be joint venturers; (2) confer
a right to participate in control of the alleged venture; (3) express an agreement to share losses;
or (4) specify how net profits were to be calculated. Id. art. 6132b-2.03(a)(2), (3), (4)(A).
      Ferguson states in his affidavit “the parties agreed to implement the terms of the Joint Venture
Agreement” as expressed in the November 1995 letter in a meeting he had with the Pollacks that
same month. Dallas Sales Co. points to part IV. of the letter, which states in pertinent part,
“Product will be distributed by both [Carlisle] and Dallas Sales” as evidence of an intent to engage
in a joint venture. The letter contains several provisions which indicate that certain items must
be “mutually agreed upon.” It provides that Carlisle has a “controlling interest (51%) in the
venture.” Indulging all reasonable inferences and resolving all doubts in Dallas Sales Co.’s favor,
these provisions raise a genuine issue of material fact on the question of whether the terms of the
letter confer a mutual right to participate in the control of the business. Id. art. 6132b—2.03(a)(3).
      Viewed in this same light, Ferguson’s statement that the parties agreed to implement the terms
of the proposal expressed in the letter raises a genuine issue of material fact on the question of
whether the parties expressed an intent to be joint venturers. Id. art. 6132b—2.03(a)(2).
      Appellees contend that the absence from the letter of an express agreement to share losses is
fatal to Dallas Sales Co.’s joint venture claim. However, the existence of such an agreement is
only one of several factors to be considered in determining whether a joint venture has been
formed. See id. art. 6132b-2.03(a). In addition, an express agreement to share losses “is not
necessary to [form a joint venture].” Id. art. 6132b-2.03(c).
      Likewise, any failure to expressly provide for the manner in which net profits were to be
calculated does not constitute a failure to agree to share profits. Again, whether the agreement
confers a right to receive a share of the profits is only one of several factors to be considered. See
id. art. 6132b-2.03(a).
      Accordingly, we hold that Dallas Sales Co. presented evidence raising a genuine issue of
material fact on the question of whether the parties formed a joint venture in November 1995.
The Pollacks’ Individual Liability
      Dallas Sales Co. contends that the Pollacks failed to conclusively establish that they were not
parties to the alleged joint venture agreement in their individual capacities. Dallas Sales Co.
argues that the Pollacks are individually liable under the alleged agreement because they signed
the November letter and because the letter expressly provides that the “principals’ time involved
will not be considered [an] allowable expense[ ].”
      The Pollacks respond that the letter expressly proposes an “agreement between Carlisle
Jewelry Company and Dallas Sales Company.” They also point to Dallas Sales Co.’s petition, in
which it alleges as fact that Ferguson and Mr. Pollack “agreed that their respective corporations
‘had a deal.’”
      When an agent contracts for a disclosed principal, the agent is not personally liable on the
contract unless he expressly or impliedly assumes some type of liability when he makes the
contract. Heffron v. Pollard, 73 Tex. 96, 100, 11 S.W. 165, 166 (1889); Schaeffer v. O’Brien,
39 S.W.3d 719, 721 (Tex. App.—Eastland 2001, pet. denied); Eppler, Guerin & Turner, Inc. v.
Kasmir, 685 S.W.2d 737, 738 (Tex. App.—Dallas 1985, writ ref’d n.r.e.). A corporate officer
is considered an agent of the corporation on behalf of which the officer acts. Burch v. Hancock,
56 S.W.3d 257, 261 (Tex. App.—Tyler 2001, no pet.). Thus, “[t]he signature of a corporate
officer on a contract does not render it his personal contract, where in the body of the contract,
it is purported to be a corporation contract.” Star Supply Co. v. Jones, 665 S.W.2d 194, 198
(Tex. App.—San Antonio 1984, no writ); accord Pabich v. Kellar, 71 S.W.3d 500, 508 (Tex.
App.—Fort Worth 2002, pet. denied).
      The November 1995 letter proposes an agreement between Carlisle and Dallas Sales Co. A
Carlisle representative (in this case, the Pollacks) had to sign the letter on behalf of the company. 
The Pollacks’ signatures do not, standing alone, make them personally liable on the alleged joint
venture agreement. Heffron, 73 Tex. at 100, 11 S.W. at 166; Schaeffer, 39 S.W.3d at 721;
Eppler, Guerin & Turner, 685 S.W.2d at 738.
      Even indulging all reasonable inferences and resolving all doubts in Dallas Sales Co.’s favor,
we cannot agree that the statement in the November 1995 letter that the “principals’ time” would
not be considered an allowable expense evidences an express or implied assumption of liability by
the Pollacks. Id.
      Accordingly, we conclude that the Pollacks conclusively established that they are not
personally liable under the alleged joint venture agreement.
Termination of Joint Venture
      Dallas Sales Co. contends that Carlisle failed to conclusively establish that Dallas Sales Co.
terminated any alleged joint venture by its January 1996 letter and/or by filing bankruptcy.
      The January 1996 letter expressly states Dallas Sales Co.’s intent to terminate the August
1995 contract. The letter also states in pertinent part, “[w]e are resigning as representatives for
Carlisle.” Carlisle contends that this statement adequately expresses Dallas Sales Co.’s intent to
withdraw from the alleged joint venture.
      According to the Act, a partner ceases to be a member of a joint venture by “receipt by the
partnership of notice of the partner’s express will to withdraw.” Tex. Rev. Civ. Stat. Ann. art.
6132b—6.01(b)(1) (Vernon Supp. 2003). The letter in question also states, “I will be in touch
with you concerning the infringements on the ‘loving family’ situation!” Indulging all reasonable
inferences and resolving all doubts in Dallas Sales Co.’s favor, the quoted provisions raise a
genuine issue of material fact on the question of whether the letter provides a statement of Dallas
Sales Co.’s “express will” to withdraw from the alleged joint venture.
      A partner also ceases to be a member of a joint venture when the partner “becom[es] a debtor
in bankruptcy.” Id. art. 6132b—6.01(b)(6) (Vernon Supp. 2003). The Act defines the term
“debtor in bankruptcy” as “a person who is the subject of:
(A) an order for relief under Title 11 of the United States Code or a comparable
order under a successor statute of general application; or
 
(B) a comparable order under federal, state, or foreign law governing insolvency.

Id. art. 6132b—1.01(4) (Vernon Supp. 2003).
      Under this definition, a bankruptcy filing standing alone does not constitute a withdrawal from
a joint venture. Carlisle did not allege in the summary judgment motion that Dallas Sales Co.
withdrew from the alleged joint venture by obtaining relief in bankruptcy court. On appeal, we
consider only the grounds Carlisle “actually presented to the trial court.” Cincinnati Life Ins., 927
S.W.2d at 625; Fletcher, 26 S.W.3d at 74. Thus, we hold that Dallas Sales Co.’s bankruptcy
filing, standing alone, did not constitute a termination of the alleged joint venture.
      Carlisle averred in its summary judgment motion that “it is clear that [Dallas Sales Co.’s]
alleged interest was $0 at September 25, 1996.” On appeal, Carlisle argues that it is entitled to
a take-nothing judgment on the joint venture claim because Dallas Sales Co. “introduced no
evidence to support an award of any damages” on its joint venture claim. However, Carlisle did
not present a “no-evidence” summary judgment claim in the trial court challenging the damages
component of Dallas Sales Co.’s joint venture claim. Because Carlisle did not raise this ground
in the trial court, we do not consider it on appeal. Id.
      Dallas Sales Co. presented evidence raising a genuine issue of material fact on the question
of whether the parties formed a joint venture in November 1995. The Pollacks conclusively
established that they are not individually liable on the alleged joint venture agreement. Carlisle
failed to conclusively establish that Dallas Sales Co. terminated the alleged joint venture by its
January 1996 letter or by filing bankruptcy. Accordingly, we sustain Dallas Sales Co.’s third
point in part and overrule it in part.
IMPROPER CHARGEBACKS
      Dallas Sales Co. contends in its fifth point that the trial court erred by rendering a summary
judgment on its claim against Penney for improper chargebacks (Count Nine of the original
petition) because: (1) Appellees’ summary judgment motion challenged this claim only as it was
alleged in Dallas Sales Co.’s original petition and not as alleged in a first amended petition which
Dallas Sales Co. tendered to the court for filing after Appellees filed their summary judgment
motion; and (2) Penney should have asserted its contention that Dallas Sales Co. had failed to state
a viable claim by special exception rather than by summary judgment motion.
      Dallas Sales Co. also avers that Penney failed to conclusively establish that Dallas Sales Co.
waived its claim for improper chargebacks by failing to give the 60-day notice required by the
parties’ listing agreement or by continuing to do business with Penney.



      Penney responds that the court never granted Dallas Sales Co. leave to file an amended
petition and cites Benton v. Wilmer-Hutchins Independent School District for the proposition that
the improper chargebacks claim is not a viable cause of action because “Texas law permits the
offset of mutual indebtedness when such is agreed to by the parties.” 662 S.W.2d 696, 698 (Tex.
App.—Dallas 1983, writ dism’d).
Amendment of Petition
      The court signed an agreed scheduling order which required the parties to file amended
pleadings on or before September 11, 1999. See Tex. R. Civ. P. 166. Dallas Sales Co. filed a
motion for leave to amend its petition on October 11, 1999 with a copy of its proposed first
amended petition attached. The court never ruled on this motion.
      Amended pleadings tendered after a deadline set under Rule of Civil Procedure 166 “shall be
filed only after leave of the judge is obtained.” Id. 63. Although the court did not rule on Dallas
Sales Co.’s motion for leave to file an amended petition, we presume that the court granted leave
unless the record affirmatively reflects that the trial court did not consider the amended pleading
and the opposing party fails to make a sufficient showing of surprise or prejudice. See Goswami
v. Metro. Sav. & Loan Assn., 751 S.W.2d 487, 490 (Tex. 1988); McIntyre v. Wilson, 50 S.W.3d
674, 684 (Tex. App.—Dallas 2001, pet. denied); Wilson v. Korthauer, 21 S.W.3d 573, 578 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied).
      The summary judgment recites that the court considered “the pleadings timely filed.” 
(emphasis added). Thus, the record affirmatively reflects that the court did not consider Dallas
Sales Co.’s first amended petition. See McIntyre, 50 S.W.3d at 684 (order did not recite that court
considered all pleadings and record of hearing reflected that court considered amended pleading
untimely); cf. Goswami, 751 S.W.2d at 490 (order recited that court considered all pleadings on
file); Wilson, 21 S.W.3d at 578 (order recited that court considered pleadings on file). Because
the trial court did not consider the amended petition in ruling on Appellees’ summary judgment
motion, we will not consider it on appeal. See Harvey v. Alexander, 671 S.W.2d 727, 729 (Tex.
App.—Fort Worth 1984, no writ); Lee v. McCormick, 647 S.W.2d 735, 736-37 (Tex.
App.—Beaumont 1983, no writ); see also Sosa v. C. Power & Light Co., 901 S.W.2d 562, 567
(Tex. App.—San Antonio), rev’d on other grounds, 909 S.W.2d 893 (Tex. 1995).



Necessity of Special Exception
      Dallas Sales Co. argues that Penney should have asserted its contention that Dallas Sales Co.
had failed to state a viable claim by way of special exception rather than in a summary judgment
motion. However, the Supreme Court has expressly recognized that a summary judgment motion
may be premised solely on a plaintiff’s “fail[ure] to state a cognizable claim.” Perry v. S.N., 973
S.W.2d 301, 303 (Tex. 1998).
Viability of Claim
      We agree with Penney that Texas law allows parties to offset mutual debts against each other
by agreement. See Benton, 662 S.W.2d at 698. The listing agreement expressly permits this type
of offset in the form of chargebacks by Penney against Dallas Sales Co.’s account. Dallas Sales
Co. alleges that Penney has violated the terms of the listing agreement by issuing improper
chargebacks.
      As Penney observes, paragraph 69 of Dallas Sales Co.’s petition seems to allege that
chargebacks issued by Penney during the bankruptcy are illegal to the extent that they asserted pre-bankruptcy charges against Dallas Sales Co.’s account during the pendency of the bankruptcy
proceeding. Thus, paragraph 69 appears to be limited to alleged improper chargebacks claimed
during the pendency of the bankruptcy (September 1996 to February 1999).
      However, paragraph 70 alleges in more general terms that “Penney’s has claimed various
[chargebacks] against sums owed Plaintiff which Plaintiff has demonstrated to Penney’s are
improper. Penney’s has nevertheless refused to drop its claims of credit and pay sums due
Plaintiff.”
      When a defendant alleges in a summary judgment motion that the plaintiff has failed to state
a cause of action, “we must take the allegations in the pleadings as true in determining whether
a cause of action exists.” Perry, 973 S.W.2d at 303. Taking the “allegations, facts, and
inferences in [Dallas Sales Co.’s petition] as true and viewing them in a light most favorable to
[Dallas Sales Co.],” we hold that Dallas Sales Co. has alleged a viable cause of action for breach
of contract against Penney. See Natividad, 875 S.W.2d at 699; Torres, 51 S.W.3d at 819; Higbie
Roth Constr., 1 S.W.3d at 811-12.
Failure to Give Notice
      The listing agreement between Dallas Sales Co. and Penney provides in pertinent part:
The Seller must notify Penney in writing within 60 days of the date that a chargeback is
issued by Penney that the Seller disputes the chargeback; otherwise, the chargeback will
be deemed valid as between Penney, or any Reseller Purchase, and Seller, or its
successor or assign.

Penney states in its brief that Dallas Sales Co.’s claim for improper chargebacks “is based solely
on a check and account summary dated December 10, 1996.” It cites Ferguson’s deposition
testimony to support this assertion. However, Ferguson’s testimony is not so definitive.
      Ferguson testified “one universe of [chargebacks]” he disputes are reflected in a check issued
to Dallas Sales Co. by Penney on December 10, 1996.


 Ferguson also testified that Dallas Sales
Co. believes that Penney took improper chargebacks “for years prior to this.” He estimated those
improper chargebacks to amount to “anywhere from 50 to $100,000 over a period of four, five,
six years.” He later testified that Dallas Sales Co.’s claims for improper chargebacks cover the
years 1991 through 1997. He testified that Dallas Sales Co. notified Penney of these claims
“[t]hroughout the year of 1997 through 1999.” Dallas Sales Co. also provided copies of written
correspondence sent to Penney at various dates in 1997 regarding alleged improper chargebacks.
      Indulging all reasonable inferences and resolving all doubts in Dallas Sales Co.’s favor, a
genuine issue of material fact remains on the question of whether Dallas Sales Co. gave 60-days
notice to Penney as required by the listing agreement.
Waiver by Conduct
The affirmative defense of waiver can be asserted against a party who intentionally
relinquishes a known right or engages in intentional conduct inconsistent with claiming
that right. A party’s express renunciation of a known right can establish waiver. Silence
or inaction, for so long a period as to show an intention to yield the known right, is also
enough to prove waiver.

Tenneco, Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 643 (Tex. 1996); accord Motor Veh. Bd.
v. El Paso Indep. Automobile Dealers Assn., 1 S.W.3d 108, 111 (Tex. 1999); ASI Techs., Inc.
v. Johnson Equip. Co., 75 S.W.3d 545, 548 (Tex. App.—San Antonio 2002, pet. denied).
      To establish the affirmative defense of waiver, Penney had to show that Dallas Sales Co. had:
(1) an existing right, benefit or advantage; (2) actual or constructive knowledge of its existence;
and (3) an actual intent to relinquish the right, benefit or advantage (which can be inferred from
Dallas Sales Co.’s conduct). ASI Techs., 75 S.W.3d at 548 (citing Sedona Contracting, Inc. v.
Ford, Powell & Carson, Inc., 995 S.W.2d 192, 195 (Tex. App.—San Antonio 1999, pet. denied)).
      Penney points to the fact that Dallas Sales Co. continued to do business with it after Dallas
Sales Co. determined that Penney took improper chargebacks as evidence that Dallas Sales Co.
“engage[d] in intentional conduct inconsistent with claiming [a] right” to recover the allegedly
improper chargebacks. See Tenneco, 925 S.W.2d at 643. Indulging all reasonable inferences and
resolving all doubts in Dallas Sales Co.’s favor, we cannot agree that Dallas Sales Co.’s continued
business relationship with Penney conclusively establishes that it intended to waive any right to
recover allegedly improper chargebacks.
      For the foregoing reasons, we sustain Dallas Sales Co.’s fifth point.
CONSPIRACY
      Dallas Sales Co. contends in its fourth point that the trial court erred by granting Appellees’
no-evidence summary judgment motion on its conspiracy claim because it presented more than a
scintilla of evidence on the elements of its conspiracy claim Appellees challenged.
      In our disposition of Dallas Sales Co.’s second point, we affirmed the trial court’s
determination that a portion of the conspiracy claim was not actionable because it sounds solely
in contract. However, we also determined that Dallas Sales Co. has alleged a claim that Penney
conspired with Fine Arts Creations to tortiously interfere with a contract between Dallas Sales Co.
and Fine Arts Creations. Accordingly, we limit our review of Dallas Sales Co.’s fourth point to
the allegation of conspiracy to tortiously interfere.
      Penney argued in the motion


 that it was entitled to a no-evidence summary judgment on the
conspiracy claim because Dallas Sales Co. could produce no evidence that (1) the alleged
conspirators had a meeting of the minds regarding the object of their alleged conspiracy or (2) the
alleged conspirators committed an unlawful, overt act in furtherance of the conspiracy.
      We apply the same standard in reviewing a no-evidence summary judgment as we would in
reviewing a directed verdict. See Robinson v. Warner-Lambert Co., 998 S.W.2d 407, 410 (Tex.
App.—Waco 1999, no pet.); Moore v. K-Mart, 981 S.W.2d 266, 269 (Tex. App.—San Antonio
1998, pet. denied). We review the evidence in the light most favorable to the non-movant,
disregarding all contrary evidence and inferences. Id. A no-evidence summary judgment will be
defeated if the non-movant produces more than a scintilla of probative evidence to raise a genuine
issue of material fact on the elements challenged by the movant. Id.; accord Wal-Mart Stores, Inc.
v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002).
      The Supreme Court has defined the tort of civil conspiracy as “a combination by two or more
persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful
means.” Bentley v. Bunton, 94 S.W.3d 561, 618 (Tex. 2002) (quoting Firestone Steel Prods. Co.
v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996)). Conspiracy has been classified as a derivative tort
because imposition of liability depends on an alleged conspirator’s participation in an underlying
tort. Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996); Avary v. Bank of Am., N.A., 72
S.W.3d 779, 792 (Tex. App.—Dallas 2002, pet. denied).
      “The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3)
a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and
(5) damages as the proximate result.” Bentley, 94 S.W.3d at 618 (quoting Massey v. Armco Steel
Co., 652 S.W.2d 932, 934 (Tex. 1983)). Penney’s no-evidence motion challenges the third and
fourth elements of Dallas Sales Co.’s conspiracy claim.
      Ferguson states the following regarding the alleged conspiracy in his affidavit:
Plaintiff advised . . . Penney’s that Plaintiff had an exclusive sales agreement with
Fine Arts for clocks sold by Fine Arts to Plaintiff. After entering into the exclusive
agreement with Fine Arts, Plaintiff disclosed to Fine Arts that Plaintiff was re-selling the
Fine Arts clocks to Penney’s. Fine Arts promptly went to Penney’s and offered to sell
the clocks directly, at a lower price, because Plaintiff was cut out of the loop. . . . 
Penney’s had knowledge of Plaintiff’s exclusive agreement, but nevertheless
circumvented Plaintiff to deal directly with Fine Arts. Fine Arts then refused to sell to
Plaintiff, and Plaintiff was unable to fill orders which Plaintiff had from Penney’s,
thereby losing both sales and profits.

      Ferguson’s affidavit asserts that Fine Arts negotiated with Penney to sell the clocks directly
to Penney rather than through Dallas Sales Co. According to Ferguson, personnel at Penney knew
of Dallas Sales Co.’s exclusive contract with Fine Arts when Penney and Fine Arts agreed to
circumvent Dallas Sales Co. This constitutes more than a scintilla of evidence to show a meeting
of the minds. See Lesikar v. Rappeport, 33 S.W.3d 282, 302 (Tex. App.—Texarkana 2000, pet.
denied).
      Ferguson also states that Penney circumvented Dallas Sales Co. and dealt directly with Fine
Arts. This constitutes more than a scintilla of evidence that Penney committed an overt act in
furtherance of the conspiracy.
      Accordingly, we sustain Dallas Sales Co.’s fourth point insofar as it challenges the court’s
no-evidence summary judgment on its claim that Penney conspired with Fine Arts Creations to
tortiously interfere with a contract between Dallas Sales Co. and Fine Arts Creations.
CONCLUSION
      We affirm the judgment as to Dallas Sales Co.’s claims for constructive fraud, breach of
fiduciary duty, equitable estoppel, and unjust enrichment (Counts Four through Seven). We
likewise affirm the judgment as to Dallas Sales Co.’s claims for: (1) breach of the alleged joint
venture and for an accounting under the alleged joint venture (Counts Two and Nine) insofar as
Dallas Sales Co. alleges that the Pollacks are individually liable on the alleged joint venture
agreement; (2) fraud (Count Three) insofar as it alleges that Carlisle and the Pollacks made
fraudulent misrepresentations “regarding the amount of commission due” under the August 1995
contract; and (3) conspiracy (Count Eight) insofar as it alleges that Appellees conspired to breach
the August 1995 contract and the alleged joint venture agreement.
      We reverse the judgment as to Dallas Sales Co.’s claims for breach of the August 1995
contract and for breach of the listing agreement (Counts One and Ten). We reverse the judgment
as to Dallas Sales Co.’s claims for: (1) breach of the alleged joint venture agreement and for an
accounting under the alleged joint venture agreement (Counts Two and Nine) insofar as Dallas
Sales Co. alleges that Carlisle was a party to the alleged joint venture; (2) fraud (Count Three)
insofar as it alleges that Carlisle and the Pollacks fraudulently induced it to enter a joint venture;
and (3) conspiracy (Count Eight) insofar as it alleges that Penney conspired with Fine Arts
Creations to tortiously interfere with Dallas Sales Co.’s exclusive contract with Fine Arts
Creations.
      We sever the claims on which we have reversed the judgment and remand that portion of the
cause to the trial court for further proceedings consistent with this opinion.
 

                                                                   REX D. DAVIS
                                                                   Chief Justice

Before Chief Justice Davis
      Justice Vance and
      Justice Gray
Affirmed in part, reversed and remanded in part
Opinion delivered and filed August 4, 2003
[CV06]